743 A.2d 748

**SAVE OUR STREETS et al.**

v.

**Douglas D. MITCHELL et al.**

**Grace Hiter**

v.

**The Harford County Chamber of Commerce, Inc. et al.**

**Nos. 102, 104, Sept. Term, 1998.**

Court of Appeals of Maryland.

Orders Sept. 29, 1998.

Jan. 10, 2000.

Alan Fischler and David L. Scull, Bethesda, for Appellants in No. 102.

Gerald I. Holtz, Chevy Chase,, for Appellees in No. 102.

J. Carroll Holzer, Towson, for Appellant in No. 104.

Stephen Winter (Miles & Stockbridge), Towson, and Stephen Elmendorf (Linowes & Blocher), Silver Spring; John Delaney (Linowes & Blocher), on brief, for Appellees in No. 104.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, KARWACKI (Retired, Specially Assigned), and RAYMOND G. THIEME, Jr. (Specially Assigned), JJ.

## ORDER

### (Save Our Streets v. Mitchell)

For the reasons to be stated in an opinion later to be filed, it is this 29th day of September, 1998,

ORDERED, by the Court of Appeals of Maryland, that the judgment of the Circuit Court for Montgomery County enjoining the Board of Supervisors of Elections for Montgomery County from printing the proposed "Speed Bump" Amendment to the Montgomery County Charter on the official ballots to be used for the November 3rd, 1998 General Election is affirmed. Costs to be paid by appellants; mandate to issue forthwith.

## ORDER

### (Hiter v. Harford County)

For reasons to be stated in an opinion later to be filed, it is this 29th day of September, 1998,

ORDERED, by the Court of Appeals of Maryland, that that part of the judgment of the Circuit Court for Harford County enjoining the Board of Election Supervisors of Harford County from placing on the ballot the proposed referendum to add section 710 and section 711 to the Harford County charter is affirmed. As to this part of the Judgment a mandate shall be issued forthwith; costs to be paid by the appellants.

ELDRIDGE, Judge.

These cases involve the validity of charter amendments proposed, pursuant to Article XI–A, § 5, of the Maryland Constitution, by petitions of the voters of Montgomery and Harford Counties respectively.[1] This opinion sets forth the

---

1. Article XI–A, § 5, provides in relevant part as follows:

reasons underlying this Court's orders of September 29, 1998, affirming injunctions issued by the Circuit Courts for Montgomery and Harford Counties which enjoined the Counties' Boards of Election Supervisors from placing the proposed charter amendments on the ballots for the 1998 general election.

## I.

As this opinion encompasses two distinct appeals, the facts and procedural history of each case are set forth separately.

## A.

In the summer of 1998, an organization called Save Our Streets submitted to the Board of Supervisors of Elections for Montgomery County a petition to place a proposed amendment to the Montgomery County Charter on the ballot for the general election to be held on November 3, 1998.[2] The Board of Election Supervisors reviewed the petition and found that it contained the requisite number of signatures.[3] The proposed amendment would have amended § 311 of the Montgomery

---

"**Section 5. Amendments to charters.**

Amendments to any charter adopted ... by any County of this State under the provisions of this Article may be proposed by a resolution of ... the Council of the County, or by a petition signed by not less than 20% of the registered voters of the ... County, provided, however, that in any case 10,000 signatures shall be sufficient to complete a petition.  * * * "

2.  The proposed amendment, which was to be added as subsection "C" to § 311 of the Montgomery County Charter, provided as follows:

"Section 311 C.  Limitations on Expenditures for Speed Bumps

County funds shall not be spent to install or maintain on any road or street any permanent physical obstacle to vehicular movement, which for purposes of this section means any speed bump or hump. Any such device previously installed shall be removed within twelve months after this section takes effect, unless the Council by an affirmative vote of seven members approves its continued use at that location, after a public hearing for which notice was posted at or near the location of the device."

3.  The requisite number of signatures is the lesser of 10,000 or 20% of the registered voters of the County.  *See* note 1, *supra.*

County Charter by prohibiting the expenditure of county funds to install or maintain speed bumps on county roads and streets. In addition, the proposed amendment would have required the removal of any previously installed speed bump within one year of the amendment's effective date, unless seven of the nine county council members approved the retention of the bump subsequent to a public hearing on the issue.

On September 9, 1998, Douglas Mitchell and several other individuals filed in the Circuit Court for Montgomery County a complaint seeking a declaratory judgment and injunctive relief. The plaintiffs alleged that the charter amendment proposed by Save Our Streets was unconstitutional and that, therefore, the Board of Election Supervisors should be enjoined from placing the amendment on the general election ballot. The case was tried before the Circuit Court on September 22, 1998. At the conclusion of the trial, the Circuit Court declared that the "proposed Speed Bump Amendment" was "contrary to Article XI–A of the Maryland Constitution" and enjoined the Board of Election Supervisors from placing the proposed amendment on the general election ballot. Save Our Streets and the Board of Election Supervisors immediately noted appeals to the Court of Special Appeals. On September 23, 1998, prior to any proceedings in the Court of Special Appeals, this Court issued a writ of certiorari. *Save Our Streets v. Mitchell,* 351 Md. 284, 718 A.2d 233 (1998).

### B.

On August 10, 1998, an organization named Friends of Harford County, Inc., submitted to the Board of Supervisors of Elections of Harford County a petition to place a proposed amendment to the Harford County Charter on the 1998 general election ballot.[4] The Board of Election Supervisors

---

4. The proposed amendment, which was to be added as §§ 710 and 711 of Article VII of the Harford County Charter, provided as follows:
   "**Section 710   Adequate Public Facilities**
   "In order to implement the adequacy standards established herein, the County Executive, any County agency, and/or the County Council

may not approve any increased or more intensive use or development of public and/or private property, through zoning, the approval of subdivision plans, the approval of site plans, the issuance of grading permits, the issuance of building permits for new residential or commercial units, or any activity in furtherance of any of the above for a period of one year after the enactment of this section.

"The County Executive, any County agency, and/or the County Council may not approve any increased or more intensive use or development of public and/or private property through zoning, the approval of subdivision plans, the approval of site plans, the issuance of grading permits, the issuance of building permits for new residential or commercial units, or any activity in furtherance of any of the above, in the County where adequacy standards as defined in this section are not met.

"Adequacy standards for the use or development of public and/or private property for residential purposes are not met where the enrollment of any school which serves the site or property sought to have a more intensive use is greater than ninety-five (95) percent of the rated capacity of the school. Rated capacity of the school shall be determined by the Harford County Board of Education, exclusive of relocatable, portable or non-permanent classrooms.

"Adequacy standards for the use or the development of public and/or private property for residential or commercial purposes are not met where:

"(1) the existing County, State and Federal roads, including road segments and intersections, in all directions from each point of entrance of the property through the intersection with the first arterial roadway to the next intersecting collector or higher functional classification road as defined by the Harford County Transportation Plan are accommodating vehicular traffic at a level of service of 'D' or below as defined by the Highway Capacity Manual or other equivalent standard in use by the County, or

"(2) the existing County, State and Federal roads, or any road segment within three miles of the property, are accommodating vehicular traffic at a level of service of 'D' or below as defined by the Highway Capacity Manual or other equivalent standard in use by the County, or

"(3) the existing State and Federal roads, or any road segment, outside of the County are accommodating vehicular traffic at a level of service of 'D' or below as defined by the Highway Capacity manual or other equivalent standard, and the low level of service is directly or proximately caused by vehicular traffic originating from within the County, or

"(4) the police, fire, or emergency medical response services providing service to the property, are not sufficient to meet the needs of the existing residential and business population according to applicable standards established for each type of service, or

"(5) the recreational facilities and public open space are not sufficient to meet the needs of the existing residential population according to applicable standards established for recreational facilities and public open space.

reviewed the petition and found that it contained the requisite number of signatures. The proposed amendment would have added new sections pertaining to land-use planning and zoning, to be numbered §§ 710 and 711 of Article VII of the county charter.

The proposed new § 710, entitled "Adequate Public Facilities," would have established various adequacy standards for "increased or more intensive use or development of public and/or private property" in the County. To implement these standards, § 710 would have imposed a one-year moratorium on approval by the County of any development proposal. The moratorium would have been comprehensive, including, *inter*

---

"Public and/or private property, proposed for increased or more intensive use or development may be exempted from the provisions of this Section if the proponent for the more intensive use can prove, by clear and convincing evidence, that the proposed use for the site will not impact or affect the adequacy standards defined in this section. "If any of the paragraphs of this section are ruled unenforceable by a competent Court, such ruling does not affect the enforceability of the remaining paragraphs of this section."

**Section 711 Standing in Land Use Proceedings and Attorney's Fees**

"(a) With respect to any administrative, judicial or other proceeding in the County concerning zoning, land use, development or construction (a "Proceeding") the following entities shall have the right to intervene as a party and shall have standing and all the rights of a party in interest or an aggrieved party, including the rights of judicial review and appeal:

"(I) Any community association representing property owners who own property located within two (2) miles of the property which is the subject of such a Proceeding; or

"(II) Any not for profit corporation operating in the County which was formed to represent the interests of citizens on matters relating to zoning, land use or development.

"(b) Any entity which exercises its right to become a party to a Proceeding as defined in Section (a) above and prevails shall be entitled to reimbursement from the County for all reasonable attorneys and expert fees incurred in connection with the Proceeding, notwithstanding any provision under Article V.

"(c) The County Executive and the Council shall levy a fee on the issuance of concept plans, preliminary subdivision plans, grading permits, and/or building permits in such amount as to provide income to the County in balance with the expenditures for any attorneys fees that may be paid pursuant to this Section.

*alia,* prohibitions on the issuance of building permits and grading permits as well as approval of subdivision plats and site plans. After the one-year moratorium would have expired, § 710 would have prohibited any development that did not meet the adequacy standards. These standards concerned school capacity for residential development and capacity regarding roads, police, fire, and emergency medical response services, and recreational facilities and public open space for both residential and commercial development. Section 710 would have permitted exemptions to its limitations if a proponent of development could prove, by clear and convincing evidence, that the proposed development would "not impact or affect the adequacy standards."

The proposed new § 711 would have granted standing, in any proceeding involving zoning, land use, development or construction, to any community association representing property owners who own property within two miles of any property involved in a proceeding and to any non-profit corporation in the County formed to represent the interests of citizens relating to zoning, land use, or development. In addition, proposed § 711 would have entitled any such community association or non-profit corporation which prevailed in a proceeding to be reimbursed by the County for attorneys' and experts' fees. To provide funds for such reimbursement, § 711 would have required the County Executive and Council to levy fees on the issuance of concept plans, preliminary subdivision plans, and grading and building permits.

The proposed charter amendment was forwarded to the Harford County Council for the Council to decide on the language of the ballot question which would describe both sections of the amendment. On August 17, 1998, the Council voted for the specific wording to be used on the ballot. The approved language for the ballot question differed in several

"If any of the paragraphs of this section are ruled unenforceable by a competent Court, such ruling does not affect the enforceability of the remaining paragraphs of this section."

respects from the original draft prepared for the Council by an assistant county attorney.

Two actions were filed in the Circuit Court for Harford County on September 18, 1998, challenging the propriety of placing the proposed charter amendment on the general election ballot. The first was a petition for a writ of mandamus filed by the Friends of Harford County, which alleged that the ballot description of the proposed amendment was misleading to the public and that the Council should be compelled to reinstate the original language prepared by an assistant county attorney. The second was an action for a declaratory judgment and injunctive relief filed by the Harford County Chamber of Commerce and several other plaintiffs against the Board of Election Supervisors, the County Council, and the County. The Chamber of Commerce alleged that the proposed charter amendment was invalid under Article XI–A of the Maryland Constitution and should not be placed on the general election ballot.

The trial of both cases was held in the Circuit Court on September 22, 1998, at which time the court granted appellant Grace Hiter's motion to intervene as a party defendant in the action filed by the Chamber of Commerce. Ms. Hiter was coordinator of the petition drive for the Friends of Harford County and chairman of the Ballot Issue Committee organized to support the placement of the proposed amendment on the general election ballot.

The Circuit Court on September 23, 1998, issued an extensive declaratory judgment, declaring that proposed §§ 710 and 711 were "legislative in nature" and therefore could not validly be included in the Harford County Charter. This declaration rendered moot the action filed by the Friends of Harford County to reinstate the ballot language as originally drafted. The Circuit Court's declaratory judgment, however, went on to discuss and rule upon the question of whether the Friends of Harford County would have had standing to maintain its action if the action were not moot. In addition to the declaratory judgment, the Circuit Court issued two orders. First, it

enjoined the Board of Election Supervisors from placing the proposed charter amendment on the ballot. Second, it dismissed as moot the action filed by the Friends of Harford County. On September 24, 1998, Ms. Hiter timely noted an appeal to the Court of Special Appeals, and, on the same day, this Court issued a writ of certiorari. *Hiter v. Harford County Chamber of Commerce*, 351 Md. 284, 718 A.2d 233 (1998).

### C.

The oral arguments in both the Montgomery County and the Harford County appeals were heard by this Court on September 29, 1998. At the conclusion of oral arguments, we issued an order affirming the judgment of the Circuit Court for Montgomery County. We also issued an order affirming that portion of the judgment of the Circuit Court for Harford County which enjoined the Board of Election Supervisors of Harford County from placing on the ballot the proposed §§ 710 and 711 charter amendment. We now shall set forth the reasons for these orders, and we shall dispose of the remainder of the appeal in the Harford County cases.

### II.

The plaintiffs attacked the proposed charter amendments in Montgomery and Harford Counties on essentially the same grounds. The plaintiffs argued that the proposed amendments contained legislative schemes and thus were not proper charter material under Article XI–A of the Maryland Constitution.[5] Relying on *Board v. Smallwood*, 327 Md. 220,

---

5. Article XI–A, commonly known as the Home Rule Amendment, was ratified by the voters in 1915. The "underlying purpose of the Article is to share with the counties and Baltimore City, within well-defined limits, powers formerly reserved to the General Assembly so as to afford the subdivisions certain powers of self-government." *Cheeks v. Cedlair Corp.*, 287 Md. 595, 597, 415 A.2d 255, 256 (1980). The Article provides, *inter alia*, that the voters of counties can adopt home rule charters for county governments, that the General Assembly shall delegate express powers to the county governments created by the

608 A.2d 1222 (1992), *Griffith v. Wakefield,* 298 Md. 381, 470 A.2d 345 (1984), and *Cheeks v. Cedlair Corp.,* 287 Md. 595, 415 A.2d 255 (1980), the plaintiffs asserted that a charter amendment must address the "form and structure" of county government. They argued that a proposed charter amendment which is essentially local legislation in disguise exceeds the power of the voters to amend their county charter because the Maryland Constitution does not permit voters to initiate local legislation.[6]

---

charters, and that the voters of the counties can amend the charters. *See Cheeks,* 287 Md. at 598–599, 415 A.2d at 256–257. Section 3 of Article XI–A provides in relevant part as follows:

"Section 3. Legislative bodies; chief executive officers; enactment, publication and interpretation of local laws.

"Every charter so formed shall provide for an elective legislative body in which shall be vested the law-making power of said ... County. Such legislative body ... in any county shall be known as the County Council of the County. * * * From and after the adoption of a charter by ... any County of this State, ... the County Council of said County, subject to the Constitution and Public General Laws of this State, shall have full power to enact local laws of said ... County including the power to repeal or amend local laws of said ... County enacted by the General Assembly, upon all matters covered by the express powers granted as above provided * * *."

**6.** In *Bd. of Election Laws v. Talbot County,* 316 Md. 332, 347–349, 558 A.2d 724, 731–732 (1989), and in *Board v. Smallwood,* 327 Md. 220, 234–236, 608 A.2d 1222, 1229–1230 (1992), we held that the voters of a county, whether by original charter provision or amendment, cannot expressly reserve to themselves the power to initiate legislation, even though they can submit to referendum legislation which has been duly enacted by a county council. Although the processes of initiative and referendum may both require a petition to submit legislation to the electorate, they are distinct with respect to the role they assign to elected government: "Initiative refers to the process by which the electorate petitions for and votes on a proposed law. Referendum is the process by which legislation passed by the governing body is submitted to the electorate for approval or disapproval." *Smallwood,* 327 Md. at 232, n. 6, 608 A.2d at 1228, n. 6, and authorities there cited.

The power to initiate local legislation is repugnant to Art. XI–A, § 3, of the Maryland Constitution, which vests a charter county's "full" law-making power in the county council. Under the Maryland Constitution, however, county voters do have a right to reserve to themselves the power to petition for a referendum on legislation previously enacted by a county council. *See Ritchmount Partnership v. Board,* 283 Md. 48, 388 A.2d 523 (1978) (holding that Art. XI–A conferred on the citizens of Anne Arundel County the right to reserve to themselves by express

The defendants, relying upon *Smallwood,* argue that charter amendments placing limits on governmental powers address the form and structure of county government and are valid under Article XI–A of the Constitution. They contend that the proposed amendments here involved place limitations upon governmental powers and, therefore, constitute proper charter material under our opinion in the *Smallwood* case.

■ This Court has "repeatedly explained that a county charter is equivalent to a constitution." *Smallwood,* 327 Md. at 237, 608 A.2d at 1230. *See Haub v. Montgomery County,* 353 Md. 448, 450, 727 A.2d 369, 370 (1999); *Bd. of Election Laws v. Talbot County,* 316 Md. 332, 341, 558 A.2d 724, 728 (1989); *Griffith v. Wakefield, supra,* 298 Md. at 385, 470 A.2d at 347–348; *County Exec., Prince Geo's Co. v. Doe,* 291 Md. 676, 680, 436 A.2d 459, 461 (1981); *Cheeks v. Cedlair Corp., supra,* 287 Md. at 606, 415 A.2d at 261; *Ritchmount Partnership v. Board,* 283 Md. 48, 58, 388 A.2d 523, 530 (1978), and cases there cited. Therefore, the "basic function" of a charter is "to distribute power among the various agencies of government, and between the government and the people who have delegated that power to their government." *Smallwood,* 327 Md. at 237, 608 A.2d at 1230. As Chief Judge Murphy stated for the Court in *Cheeks,* 287 Md. at 607, 415 A.2d at 261:

"A charter is thus a permanent document intended to provide a broad organizational framework establishing the form and structure of government in pursuance of which the

---

charter provision the power to refer legislation enacted by their County Council). In *Smallwood,* we reiterated the distinction between the powers of referendum and initiative (327 Md. at 235, 608 A.2d at 1229, quoting *Cheeks,* 287 Md. at 613, 415 A.2d at 264):

" 'The powers of referendum and initiative, though each may affect the form or structure of local government, are otherwise distinctly different. Under the referendum power, the elective legislative body, consistent with § 3, continues to be the primary legislative organ, for it has formulated and approved the legislative enactment referred to the people. The exercise of the legislative initiative power, however, completely circumvents the legislative body, thereby totally undermining its status as the primary legislative organ.' "

political subdivision is to be governed and local laws enacted. It is the organic, the fundamental law. . . ."

Although § 6 of Art. XI–A of the Maryland Constitution reserves to the people of a charter county the power to amend the charter, this power is limited by §§ 2 and 3. *See Cheeks,* 287 Md. at 608–610, 415 A.2d at 262. Section 2 specifies that the General Assembly shall, "by public general law," grant "express powers" to the governments of charter counties and that such powers "shall not be enlarged or extended by any charter formed under the provisions" of Article XI–A.[7] Section 3 provides that each charter county shall have a county council, which is "an elective legislative body in which shall be vested the law-making power" of the county. Section 3 of Article XI–A goes on to state that the county council shall have "full power to enact local laws . . . upon all matters covered by the express powers granted" pursuant to § 2. Therefore, in *Cheeks,* and again in *Griffith,* we "contrasted" the ability to adopt or amend a charter, which is the "power to organize a local government, reserved to the people of a charter county . . . under Article XI–A," with the power to enact legislation. *Griffith,* 298 Md. at 385, 470 A.2d at 348. In *Cheeks,* we explained in detail that the county council alone, and not the voters of the county, has the power to initiate local legislation. 287 Md. at 612–614, 415 A.2d at 264–265. Furthermore, we held that such legislative power cannot be exercised by means of an amendment to the charter (287 Md. at 607, 415 A.2d at 261):

"[A] charter amendment within the context of Art. XI–A is necessarily limited in substance to amending the form or structure of government initially established by adoption of the charter. A charter amendment, therefore, differs in its fundamental character from a simple legislative enactment.

---

7. Most of these express powers are enumerated in Maryland Code (1957, 1998 Repl.Vol., 1999 Supp.), Art. 25A, § 5, commonly known as the Express Powers Act. Of particular relevance to the case at bar are the powers to regulate the condition and use of roads (*See* §§ 5(K) & (T)) and to enact local laws pertaining to land-use planning and zoning (§§ 5(U),(X), (BB), and (EE)).

Its content cannot transcend its limited office and be made to serve or function as a vehicle though which to adopt local legislation."

Accordingly, in both *Cheeks* and *Griffith,* we invalidated "attempts by the voters to initiate detailed legislation through the guise of charter amendments." *Smallwood,* 327 Md. at 239, 608 A.2d at 1231. In *Smallwood,* however, we upheld those portions of proposed charter amendments that were sufficiently fundamental in nature to be included in a charter. A brief review of the facts of each case illustrates the distinction between proposed charter amendments which delineate the basic form and structure of the local government and are, therefore, proper charter material, and those proposed charter amendments which are legislative in nature.

*Cheeks* involved a proposed amendment to the Baltimore City Charter that would have established a tenant-landlord commission to implement a comprehensive system of rent control.[8] The proposed charter amendment prescribed "in lengthy detail, the powers and duties of the Commission in administering the system of rent control." *Cheeks,* 287 Md. at 602, 415 A.2d at 258. The Court held that the amendment was "essentially legislative in character" as it constituted an exercise of governmental power "in all respects similar to the enactment of a local law." *Cheeks,* 287 Md. at 608, 415 A.2d at 262. Thus, we held that the proposed amendment was not proper charter material; rather, it was an attempt to "divest" the City Council of "its acknowledged ... power to legislate on the subject of rent control." *Cheeks,* 287 Md. at 609, 415 A.2d at 262.

In *Griffith,* we invalidated a proposed charter amendment to create a comprehensive system of collective bargaining and binding arbitration for Baltimore County and a single group of county employees, firefighters. The proposed amendment set

---

8. Baltimore City, like the charter counties, is an Article XI–A jurisdiction rather than a municipal corporation governed by Article XI–E of the Maryland Constitution. *See Griffith,* 298 Md. at 385, 470 A.2d at 348; *Cheeks,* 287 Md. at 597–601, 415 A.2d at 256–258.

forth a "complete and specifically detailed legislative scheme" that left "nothing for the determination of the ... County Council." 298 Md. at 386, 388, 470 A.2d at 348, 349. The "binding arbitration feature of the amendment" would have "divest[ed] the elected officials of Baltimore County of any discretion in reaching an agreement on 'the wages, benefits, hours and working conditions' of the fire fighters." 298 Md. at 388, 470 A.2d at 349 (quoting the proposed amendment). The Court held that the amendment was invalid because, like the proposed amendment in *Cheeks*, it was " 'essentially legislative in character.' " 298 Md. at 388, 470 A.2d at 349, quoting *Cheeks*, 287 Md. at 608, 415 A.2d at 262.

In *Smallwood*, however, this Court upheld the facial validity of proposed charter amendments that would have placed a percentage cap on the amount by which the Anne Arundel and Baltimore County Councils could raise the local property taxes in their respective counties. In explaining that such amendments were not essentially legislative in nature, we relied on a distinction that we had made previously in *Griffith* between proposed charter amendments that " 'authorize, or preclude, specified types of enactments by legislative bodies,' " and thus are ordinarily valid, and those that constitute specific legislative schemes, and thus are ordinarily invalid. 327 Md. at 239, 608 A.2d at 1231, quoting 298 Md. at 389, 470 A.2d at 350. Unlike the proposed amendments in *Cheeks* and *Griffith*, the proposed amendments in *Smallwood* were "not back-door attempts by the voters" to "enact detailed legislation." 327 Md. at 240, 608 A.2d at 1232. The Court noted that they did not "divest the county councils of the ability to set the property tax rates." *Ibid.* Instead, the proposed amendments "would have merely precluded a particular type of enactment by the legislative body." *Ibid.* The *Smallwood* opinion also pointed out that "[l]imitations imposed by the people on their government are fundamental elements of a constitution." 327 Md. at 237–238, 608 A.2d at 1230–1231, and authorities there cited. The proposed amendments in *Small-wood* were fundamental in nature because they "directly involved the relationship between the people and the govern-

ment by limiting the power of the government to tax." 327 Md. at 237, 608 A.2d at 1230. Accordingly, we held "that a provision in a county charter placing restrictions upon the county council's revenue raising authority is a fundamental aspect of the form and structure of government and thus is proper charter material." 327 Md. at 241, 608 A.2d at 1232.

It is important to stress that our holding in *Smallwood* was precisely phrased. We did not state that any proposed charter amendment which is articulated as a limitation on governmental power is valid under Article XI–A. Nor did we state that the proposed amendments addressed in *Smallwood* were constitutional merely because they were expressed as limitations on governmental power.[9] Rather, they were constitutional limitations because they pertained to "a fundamental aspect of the form and structure of government." 327 Md. at 241, 608 A.2d at 1232. The distinction between the fundamental, general nature of a charter and the specificity characteristic of county council legislative enactments authorized by a charter framework, is essential to the system of representative democracy provided for in Article XI–A of the Maryland Constitution. County charters are, in effect, constitutions for county governments, and Article XI–A contemplates that they should reflect the broad outlines of governmental powers and limitations. Under Article XI–A, the enactment of specific legislation is left to the elected legislative bodies.[10]

---

**9.** Virtually any legislative scheme could be phrased as a limitation on governmental power. For example, the proposed charter amendment which this Court invalidated in *Griffith* could have stated that Baltimore County would be prohibited from resolving contract disputes between the county government and the firefighters union by any means other than by the binding arbitration scheme set forth in the amendment. Merely expressing the binding arbitration scheme as a limitation on the County Council's power would not save it from being essentially legislative in nature.

**10.** As Chief Justice John Marshall emphasized early in our nation's history, a constitution necessarily provides a broad framework which both empowers and limits a legislature in its enactment of specific laws (*M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579, 601 (1819)):

The proposed charter amendments in the case at bar are not analogous to the percentage tax caps upheld in *Smallwood* because they do not impose general and fundamental limitations on a governmental power such as the power to tax. Instead, they are analogous to the proposed charter amendments invalidated in *Cheeks* and *Griffith* because they amount to specific legislative schemes. The appellants Save Our Streets and Hiter seem to suggest that the *Smallwood* decision created an exception to the principles set forth in *Cheeks* and *Griffith*. To the contrary, the percentage tax cap provisions upheld in *Smallwood* exemplify the distinction emphasized in *Griffith* between a legislative scheme, which may only be enacted by the county council, and an authorization or preclusion of a county council's power to enact a type of legislation, which is proper charter material.

Although both *Cheeks* and *Griffith* involved legislative schemes that were lengthy and detailed, thereby furnishing some indication of ordinary legislation under the guise of charter amendments, nevertheless the length and detail of a proposed charter amendment are not dispositive as to whether the proposed amendment constitutes legislation or proper charter material. An important consideration is the degree to which the county council retains discretion and control regarding an area under its authority pursuant to Article XI–A of the Maryland Constitution. The charter amendments proposed by Save Our Streets and Hiter would as completely remove any meaningful exercise of discretion from the County Councils as would have the amendments in *Cheeks* and *Griffith*.

"A constitution, to contain an accurate detail of all the subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, would partake of the prolixity of a legal code, and could scarcely be embraced by the human mind. It would, probably, never be understood by the public. Its nature, therefore, requires, that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects, be deduced from the nature of the objects themselves."

What this Court said about the proposed charter amendment in *Griffith* is fully applicable to the proposed amendments in the cases at bar. We there explained (298 Md. at 389–390, 470 A.2d at 350):

"The flaw in [the defendant's] argument is the failure to distinguish between 'authorization' on the one hand and a detailed local enactment on the other hand. It is common for constitutions or charters to authorize, or preclude, specified types of enactments by legislative bodies. This is quite different from a charter itself containing all of the ... provisions concerning the subject.

"If the proposed Baltimore County charter amendment had merely *authorized* the Baltimore County Council to enact a system of binding arbitration with regard to the compensation of Baltimore County employees, and if, pursuant to that authorization, the Baltimore County Council had exercised its discretion to enact *an ordinance* containing provisions similar to those in the proposed charter amendment now before us, the present case would be distinguishable from *Cheeks*. ... In the present case, however, the proposed charter amendment did not authorize the County Council to enact binding arbitration legislation for county employees. It did not authorize any decisions by the constitutional legislative body. Instead, under the proposal, the charter itself would contain all of the law on the subject, and the Baltimore County Council would be deprived of all decision-making authority concerning the subject."

As pointed out in the above-quoted language, an authorization or preclusion of a type of legislative enactment allows for the council's exercise of discretion and, thus, is ordinarily proper charter material. In *Smallwood*, the percentage cap provisions imposed a broad limit on the County Councils' power to levy property taxes. As explained previously, the provisions did not set specific tax rates but merely imposed a ceiling under which the county councils could exercise their discretion. Moreover, the provisions did not direct to what particular purposes property tax revenues would be expended. Similarly, if the proposed charter amendment in *Griffith* had

simply authorized the Baltimore County Council to enact specific legislation regarding collective bargaining and binding arbitration between the County and the firefighters' union, the proposed amendment would not have been invalid under Article XI–A of the Maryland Constitution.

■■ The proposed charter amendments in the present cases are neither broad authorizations nor similar to general limits on a county's taxing power. The proposed Speed Bump amendment would narrowly mandate that the County Council could not authorize new speed bumps and must remove existing speed bumps. Although Hiter argues that § 710 of the proposed amendment to the Harford County Charter "implicitly" authorizes the County Council to enact legislation to establish adequate facilities standards, we fail to understand where or how such authorization is made. Section 710 repeatedly refers to the "adequacy standards" explicitly "established" and "defined" by its own paragraphs 3 and 4. For example, the purpose of the moratorium on development described in paragraph 1 is to "implement the adequacy standards established" by paragraphs 3 and 4. Thus, the amendment proposed by Hiter, like that proposed by Save Our Streets, leaves virtually no room for an exercise of discretion by the County Council. As the Circuit Court for Harford County correctly concluded, "[i]n reality, the provisions of Section 710 are an attenuated form of an adequate public facilities ordinance that, by its terms, is intended to impose various limitations on prospective developments. As such, it is legislative in nature."

### III.

As stated previously, our order of September 29, 1998, affirmed the declaratory judgment issued and the injunctive relief granted by the Circuit Court for Montgomery County in the case involving the proposed "Speed Bump" amendment. On the same day, however, we affirmed only that part of the judgment of the Circuit Court for Harford County which enjoined the Board of Election Supervisors of Harford County

from placing on the ballot the proposed amendments regarding adequate facilities standards and standing in zoning cases. Consequently, we dispose of the remaining portion of that judgment as follows:

*IN NO. 104, THE ORDER OF THE CIRCUIT COURT FOR HARFORD COUNTY DISMISSING AS MOOT THE ACTION FILED BY THE FRIENDS OF HARFORD COUNTY IS AFFIRMED; SO MUCH OF THE DECLARATORY JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY THAT RELATES TO THE ISSUE OF WHAT IS PROPER CHARTER MATERIAL IS AFFIRMED; THAT PORTION OF THE DECLARATORY JUDGMENT THAT ADDRESSES THE STANDING OF THE FRIENDS OF HARFORD COUNTY IS VACATED.*