988 A.2d 555

**WICOMICO COUNTY FRATERNAL ORDER OF POLICE, LODGE 111, et al.**

v.

**WICOMICO COUNTY, Maryland, et al.**

**No. 2034, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Feb. 1, 2010.

Michael Marshall (Schlachman, Belsky & Weiner, PA, on brief), Baltimore, MD, for Appellant.

Daniel Karp, Victoria M. Shearer, Karpinsky, Colaresi & Karp, Baltimore, MD, for Appellee.

Panel: JAMES R. EYLER, KEHOE, and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

JAMES R. EYLER, Judge.

This case involves the validity of an amendment to a charter (" Charter Amendment or Amendment"), adopted by the voters in Wicomico County, pursuant to Article XI–A, § 5 of the Maryland Constitution. The Charter Amendment required the Wicomico County Council to adopt a law providing for collective bargaining with binding arbitration of disputes between the County and the deputies in the Wicomico County Sheriff's Office. After the County Council adopted a law pursuant to the Charter Amendment, the Wicomico County Fraternal Order of Police, Lodge # 111, Inc., and individual members of the Lodge, appellants, acting on behalf of the deputies, filed an action in the Circuit Court for Wicomico County against Wicomico County, the County Executive, and the County Council members, appellees, seeking a declaration that the law was not in compliance with the Charter Amendment and seeking an order requiring compliance.

Appellees filed a counterclaim and a motion for summary judgment, seeking a declaration that the Charter Amendment was unconstitutional. The circuit court held that the Charter Amendment was unconstitutional and entered summary judgment in favor of appellees, which prompted this appeal. We will affirm the decision of the circuit court.

## Question Presented

As phrased by us, we consider one issue:[1]

Whether the circuit court erred in concluding that the Charter Amendment violated Article XI–A of the Maryland Constitution.

## Factual and Procedural History

Article XI–A of the Maryland Constitution provides for the manner in which counties may adopt charter home rule. Wicomico County is a charter home rule county. Section 5 of Article XI–A sets forth the procedure for amending county charters. In essence, it provides that an amendment may be proposed (1) by a county council or (2) by a petition filed with the county council, which contains the signatures of at least 10,000 registered voters in the county or 20% of the registered voters in the county if that number is less than 10,000. Article X, § 1002 (2009), of the Wicomico County Charter, corresponds to Article XI–A, § 5 and contains language which is substantively the same as § 5.

In August of 2006, appellants, pursuant to the above provisions, initiated a petition to amend the County Charter and obtained the required number of signatures. The proposed amendment was to Article VI of the Charter, entitled "Personnel Provisions," and, subject to adoption, required the County

---

1. Appellants posed the following questions:

    1. Does a citizen initiative that requires collective bargaining with binding arbitration preclude a legislative body from delimiting the mandate of the voters?

    2. Is a charter amendment providing for collective bargaining with binding arbitration, which preserves legislative autonomy to accept or reject an arbitrator's decision, constitutional?

Council to enact a law providing for collective bargaining with binding arbitration with the deputies in the County Sheriff's Office. The proposed amendment read as follows:

The Wicomico County Council shall provide by law for collective bargaining with binding arbitration with an authorized representative of the Wicomico County Sheriff's Office deputies. Any law so enacted shall prohibit strikes or work stoppage by deputies. The County Council shall provide by law a labor code for sworn employees of the Wicomico County Sheriff's Office to effectuate this charter provision. This section shall supercede any conflicting provisions of the Wicomico County Charter or other Wicomico County provisions.

The proposed Amendment was submitted to voters on the November 2006 ballot, as follows: "To amend the Wicomico County Charter to require that the County Council adopt a law providing for collective bargaining with binding arbitration of disputes between the County and an authorized representative of the Sheriff's Office Deputies."

The proposed Amendment received the requisite number of votes and, thus, became a part of the Wicomico County Charter, appearing as § 601.1 entitled "Collective Bargaining". The new section followed existing § 601, which contained personnel provisions.

Pursuant to the Charter Amendment, the County Council, on December 18, 2007, passed Legislative Bill No. 2007–3. On January 9, 2008, the County Executive vetoed the bill. The County Council overrode the County Executive's veto and, on January 15, 2008, enacted the legislation. The legislation amended chapter 59 of the Wicomico County Labor Code. The legislative amendments were extensive, but we will refer only to those which are relevant. In pertinent part, they provided that the arbitrator shall take into consideration:

The wages, hours, or terms and conditions of employment of other employees in Wicomico County.

The wages, hours, or terms and conditions of other employees performing similar services in comparable departments

in other Maryland Eastern Shore counties, whether or not established by a collective bargaining agreement taking into consideration the cost of living index for the area in which any such comparable department is located.

Section 59–11. H. 1.

In considering the availability of funds, the arbitrator:

Shall only consider the general fund revenue for he upcoming fiscal year, Shall not consider reserve funds or funds for capital improvement or surplus contingency or reserve funds.

§ 59–11. H. 2.

The decision of the arbitrator shall be binding on the County Executive, the Exclusive Representative, and the individual employees in the representation unit.

§ 509–11. I.

On or before May 1, the County Council shall indicate by resolution its intention to appropriate funds for or otherwise implement the agreement or its intention not to do so, and shall state its reasons for any intent to reject any part of the agreement.

§ 59–11. J.

Appellants filed in circuit court a petition for writ of mandamus and complaint for declaratory relief, later amended, alleging that the legislation placed restrictions on the arbitrator and did not make the arbitrator's decisions binding on the County Council, in violation of the Charter. Appellants sought a writ of mandamus and declaratory relief, declaring that the Charter Amendment was binding on the County Council and that the legislation enacted by the Council was unlawful and not in compliance with the Charter Amendment.

Appellees filed a counterclaim for declaratory relief, asserting that the Charter Amendment constituted "an exercise of the police power and an attempt to legislate by charter initiative" and requesting a declaratory judgment that the Charter Amendment was "invalid and unconstitutional under Article XI–A of the Maryland Constitution." In the alterna-

tive, appellees sought a declaratory judgment that Legislative Bill No. 2007–3 fully complied with the Charter Amendment and was lawful in all respects. Appellees also filed a motion for summary judgment.

On August 22, 2008, after the parties filed supporting and opposing memoranda, the circuit court held a hearing on the motion for summary judgment. By order and memorandum opinion dated September 19, 2008, the court granted appellees' motion. The circuit court, after noting that appellants characterized the Charter Amendment as a referendum,[2] found that the Charter Amendment was a citizen initiative. A citizen initiative refers to "the process by which the electorate petitions for and votes on a proposed law," thereby circumventing the governing legislative body. *Bd. of Supervisors of Elections v. Smallwood*, 327 Md. 220, 232 n. 6, 608 A.2d 1222 (1992) (citing *Cheeks v. Cedlair Corp.*, 287 Md. 595, 613 n. 9, 415 A.2d 255 (1980) and *Ritchmount Partnership v. Board*, 283 Md. 48, 60, 388 A.2d 523 (1978)). A referendum is the "process by which legislation passed by the governing body is submitted to the electorate for approval or disapproval." *Id. See* Md Code (2009), art. 25A, § 8.

The court explained that Wicomico County is a charter county under Md. Const. Article XI–A; consequently, "its elected legislative body, the County Council, as opposed to the electorate, is vested with law-making powers, and the electorate may not enact laws concerning matters that are contained in the express powers of the legislative body." The court found that the Charter Amendment required the County Council to pass a law that "it and the County Executive would submit to binding arbitration" and that this law would divest "the County Council of its discretion to reach an agreement with [appellants] regarding salary terms and working conditions."

---

**2.** We note that the County Charter refers to the Amendment, in § 601.1, as a "referendum."

The circuit court found that the Charter Amendment did not amend the "form or structure" of government, which legally may be done by citizen initiative, but rather "usurp[ed] the County Council's express legislative power"; thus the Amendment was unconstitutional. The court noted that because all of appellants' claims were based on the premise that the Charter Amendment was constitutional, but the court found it unconstitutional, the court denied all of appellants' requested relief. Accordingly, the court granted summary judgment in favor of appellees.

On September 26, 2008, appellants filed a motion to alter or amend the judgment, asserting that because the legislation enacted by the County Council, Bill 2007–03, provided that arbitration was binding only on the County Executive, the County Council had full discretion to implement or reject all or any part of a collective bargaining agreement. Thus, appellants requested that the court clarify its position and state whether or why the legislation was unconstitutional.

The court denied appellants' motion to alter or amend the judgment. This appeal followed.

We shall incorporate additional facts as necessary in our discussion.

## Discussion

On appeal, appellants make two contentions. First, appellants contend that (1) the Charter Amendment requires the County Council to bind itself to arbitration and prohibits it from unduly restricting the arbitrator, (2) the Charter Amendment as so interpreted is constitutional, and (3) the legislation enacted by the County Council is unlawful in that it does not bind the County Council to binding arbitration and unduly restricts the authority of the arbitrator. Second, appellants contend, in the alternative, that the Charter Amendment was correctly interpreted by the County Council, and as implemented by the enactment of Legislative Bill No. 2007–3, is constitutional.

Appellees contend (1) the circuit court was correct in holding that the Charter Amendment was unconstitutional and (2), in the alternative, the legislation, as enacted, is lawful and in compliance with the Amendment. With respect to the alternative contention, appellees explain that, if the legislation is not in compliance, the Charter Amendment necessarily is unconstitutional.

We agree with the circuit court that the Charter Amendment required the Council to enact a law binding itself to arbitration with respect to the subject matter at issue and that it is unconstitutional. Thus, there is no need to address the alternative contentions. Fortunately, the law applicable to the issue has been outlined by the Court of Appeals in prior decisions, and we will rely heavily on those decisions.

Md. Const. Article XI–A, § 6 reserves to the voters in a charter county the power to amend the charter. This power is limited, however, by sections 2 and 3 of Article XI–A of the Maryland Constitution. *See Save Our Streets v. Mitchell,* 357 Md. 237, 249, 743 A.2d 748 (2000).

Md. Const. Article XI–A, § 2 provides that the legislature shall grant express powers to the governments of charter counties and that such powers shall not be enlarged by a charter adopted under Article XI–A.[3] Thus, a charter amendment "cannot transcend its limited office and be made to serve or function as a vehicle through which to adopt local legislation." *Cheeks v. Cedlair Corp.,* 287 Md. 595, 607, 415 A.2d 255 (1980).

Md. Const. Article XI–A, § 3 states that every county charter must have a legislative body "in which shall be vested the law-making power" of that County. Md. Const. Article XI–A, § 3 also provides that the County Council "shall have full power to enact local laws ... upon all matters covered by the express powers granted [by Md. Const. Article XI–A, § 2]." *See Mitchell,* 357 Md. at 249, 743 A.2d 748. The

---

**3.** Most of the express powers are contained in Md Code (2001 Repl. Vol., Supp.2009), art. 25A, § 5.

legislative body of Wicomico County is the County Council and is "vested with all the law-making powers thereof." Wicomico County Charter, art. III, §§ 302, 209.

■ We agree with the circuit court, for the reasons given by it, that the Charter Amendment was a citizen initiative, not a referendum. *Smallwood,* 327 Md. 220, 232 n. 6, 608 A.2d 1222 (1992). Voters cannot initiate local legislation because it is "repugnant" to Article XI–A, § 3 of the Maryland Constitution. *Mitchell,* 357 Md. at 247, 743 A.2d 748. *See Md. State Admin. Bd. of Election Laws v. Talbot County,* 316 Md. 332, 347–49, 558 A.2d 724 (1988).

■ As a result of the above limitations, a charter amendment "within the context of Art. XI–A is necessarily limited in substance to amending the form or structure of government initially established by adoption of the charter." *Cheeks,* 287 Md. at 607, 415 A.2d 255; *Mitchell,* 357 Md. at 250, 743 A.2d 748 (distinguishing "between proposed charter amendments which delineate the basic form and structure of the local government and ... those proposed charter amendments which are legislative in nature").

■ Applying the above principles, the question before us turns on whether the Charter Amendment changed the form and structure of government or whether it was legislative in nature. We conclude that it was the latter.

■ The Wicomico County Charter established the form and structure of the County government, with different branches. The legislative powers were vested in the Council. See Charter, Article III, §§ 302 and 309. The Charter Amendment was placed immediately following Article VI, § 601 in the Wicomico County Charter, and was designated § 601.1. Section 601 contains various personnel provisions. One of the provisions requires the County Executive to prepare personnel rules, including a pay plan and benefits, for County employees. It is notable that the actions specified in the section are subject to approval, modification, or rejection by the County Council. The Charter Amendment required

the County Council to enact legislation. It did not purport to change the form or structure of the government. We acknowledge that a charter amendment can limit the fiscal power and authority of a county council as part of a general structural change, or it can authorize a council to enact or preclude a council from enacting a particular type of legislation, *Mitchell,* 357 Md. at 253, 743 A.2d 748, but that is different from requiring the council to exercise its legislative authority in a certain way, as to a certain group, as in the case before us.

We find especially instructive the decisions in *Griffith v. Wakefield,* 298 Md. 381, 470 A.2d 345 (1984) and *Cheeks.* In *Griffith,* a Baltimore County charter amendment required the resolution of labor disputes, involving county-employed fire fighters, through binding arbitration. *Id.* at 382, 470 A.2d 345. The proposed amendment prescribed, in lengthy detail, "an entire system of binding arbitration for a select group of county employees." *Id.* at 386, 470 A.2d 345.

The Court in *Griffith* stated that when the proposed Baltimore County amendment was "viewed as a whole," it was clear that it was not intended to alter the form or structure of the Baltimore County government. *Id.* at 388, 470 A.2d 345. Rather, "the core of the amendment [was] the imposition of a comprehensive system of binding arbitration concerning a single group of county employees." *Id.* at 388, 470 A.2d 345.

In *Cheeks,* 287 Md. at 595, 415 A.2d 255, a charter amendment created an agency with authority over landlord-tenant relations and a system for regulating rent prices and went into "lengthy detail" about the agency's power and duty to regulate rent prices and impose penalties. *Cheeks,* 287 Md. at 602, 415 A.2d 255. As in *Griffith,* the amendment contained a detailed scheme. The Court, concluding that "the core of the amendment is the imposition of ceilings ... which ... constitutes an exercise of the police power in all respects similar to the enactment of a local law," invalidated the amendment. *Cheeks,* 287 Md. at 609, 415 A.2d 255.

Appellants argue that *Griffith* and *Cheeks* are distinguishable because the present case does not contain a detailed scheme of binding arbitration. However, "the length and detail of a proposed charter amendment are not dispositive as to whether the proposed amendment constitutes legislation or proper charter material." *Mitchell,* 357 Md. at 253, 743 A.2d 748. The question is whether the Charter Amendment changed the form and structure of government, *Mitchell,* 357 Md. at 250, 743 A.2d 748. We conclude that it did not; rather, it required the Council to legislate on the subject of personnel matters affecting a certain group. The Amendment imposed a binding system of arbitration applicable to one group of County employees and was legislative in nature.

Appellants argue that when "the totality of the circumstances [are] properly analyzed, this case is most similar to [*Smallwood, supra* ]." In *Smallwood,* the Court of Appeals upheld a proposed charter amendment that placed a percentage cap on the amount by which the local legislative bodies in Anne Arundel County and Baltimore County could raise property taxes. *Smallwood,* 327 Md. at 229–30, 608 A.2d 1222. The Court, in explaining that the amendments were not essentially legislative in nature, distinguished between amendments that authorize or preclude certain types of enactments by legislative bodies and those that constitute specific legislative schemes. *Id.* at 239, 608 A.2d 1222. The former is ordinarily valid, and the latter is ordinarily invalid. *Id.* The Court reasoned that the percentage cap did not "divest the county councils of the ability to set the property tax rates." *Id.* at 240, 608 A.2d 1222. Instead, it "merely precluded a particular type of enactment by the legislative body, namely the power to collect property taxes above the specified cap." *Id.*

Unlike in *Smallwood,* the Charter Amendment here did not "authorize, or preclude, specified types of enactments by legislative bodies." *Smallwood,* 327 Md. at 239, 608 A.2d 1222. If the Charter Amendment had merely authorized the Wicomico County Council to enact a system of binding arbitration, and the County Council exercised its discretion to enact a

law pursuant to that authorization, the Council would not have been deprived of all decision-making authority. *See Mitchell,* 357 Md. at 254, 743 A.2d 748. The Charter Amendment, however, mandated that the Council enact legislation, with or without County Executive approval.

■ Appellants argue that requiring the County Council to abide by the decision of the arbitrator is an acceptable limitation on the Council's fiscal power. Again, we acknowledge that restrictions on a county council's revenue raising authority may relate to the form and structure of government and thus may be proper charter material, but the Charter Amendment does not fall into that category. *See Smallwood,* 327 Md. at 240–41, 608 A.2d 1222 (noting that an executive budget system permissibly places restrictions on the fiscal power of county councils).[4] Wicomico County's budgetary and fiscal procedures are set forth in Article VII of the Charter. Section 705 provides that the County Executive submit an annual expense budget to the Council, and the Council may decrease or delete items except those items that are required by law. The Charter Amendment does not purport to change the budget system of Wicomico County, nor does it make broad authorizations or place general limits on the County Council's taxing or other fiscal power. *Mitchell,* 357 Md. at 253, 743 A.2d 748 (citing *Smallwood,* 327 Md. at 241, 608 A.2d 1222). The Charter Amendment mandated the enactment of legislation which usurped the Council's legislative discretion with respect to a specific subject matter and a specific group of employees. *See Mitchell,* 357 Md. at 253, 743 A.2d 748.

The Charter Amendment, on its face, violated Md. Const. art. XI–A, § 3, which provides that the law-making power "shall" be vested in the legislative body. Through the Charter Amendment, the electorate was "attempting to circumvent the local legislative body and enact local law." *Griffith,* 298 Md.

4. Under the executive budget system, in effect in several counties, the county executive prepares a budget for each fiscal year. The county council has limited authority to change the proposed budget. *Smallwood,* 327 Md. at 240–41, 608 A.2d 1222.

at 388, 470 A.2d 345.   Thus, we hold the Charter Amendment unconstitutional and affirm the decision of the circuit court. Because Legislative Bill 2007–03 was mandated by the Charter Amendment, it is invalid.[5]

**JUDGMENT AFFIRMED.   COSTS TO BE PAID BY APPELLANTS.**

---

5.   We note that Maryland Code (2006 Repl.Vol.), § 2–309 of the Courts & Judicial Proceedings Article ("CJ") governs salaries and expenses for sheriffs and their deputies.   The general Assembly has granted collective bargaining rights to employees of sheriffs' offices in certain counties but not in Wicomico County.   CJ § 2–239(x).   The parties did not refer to this statute and, therefore, did not argue its effect.