53 A.3d 1184

O'Brien ATKINSON, IV, et al.

v.

ANNE ARUNDEL COUNTY, Maryland.

No. 111, Sept. Term, 2011.

Court of Appeals of Maryland.

Sept. 28, 2012.

Joel A. Smith (Christopher R. Ryon and David Gray Wright, Kahn, Smith & Collins, P.A., Baltimore, MD), on brief, for Appellants/Cross–Appellees.

David A. Plymyer, Deputy Co. Atty. (Jonathan A. Hodgson, Co. Atty., and William C. Dickerson, Senior Assistant Co. Atty., Anne Arundel County of Law, Annapolis, MD), on brief, for Appellee/Cross–Appellant.

Bruce R. Lerner, Esquire, Matthew Stark Rubin, Esquire, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., for Amicus Curiae brief of Maryland State Fraternal Order of Police.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

RODOWSKY, J.

In 2002, the voters of Anne Arundel County adopted an amendment to the County Charter relating to the resolution by binding arbitration of collective bargaining impasses with the County's law enforcement employees and uniformed firefighters. In 2003, the County Council adopted an ordinance implementing that Charter provision. In 2011, the County Council amended the 2003 ordinance to provide, *inter alia,* that binding arbitration did not require the Council "to appropriate funds or enact legislation necessary to implement a final written award" in arbitration. An uncodified section of the 2011 Council bill also provided that, if any part of the 2011

ordinance were held invalid, the entire County Code section enacted by the 2003 ordinance, as amended through the 2011 ordinance, would be "deemed repealed by operation of law," with the result that impasses would be addressed by a Code section that did not authorize binding arbitration.

The Petitioners are certain aggrieved members of the bargaining units that are affected by the 2011 ordinance and those members' unions.[1] They seek a declaratory judgment that the 2011 ordinance violates the 2002 Charter amendment.

The Respondent is Anne Arundel County, Maryland (the County), a charter county with an executive budget system. The County contends that the 2002 Charter amendment, properly construed to avoid constitutional issues, requires the County Executive to propose funding in the budget to comply with a binding award, but that the County Council may reduce or eliminate that proposed appropriation. If the 2011 ordinance violates the Charter, the County seeks, by counterclaim, a declaratory judgment that the 2002 Charter amendment is unconstitutional under Maryland Constitution, Article XI–A (the Home Rule Amendment), § 3 because the Charter amendment is not "charter material," under *Cheeks v. Cedlair Corp.*, 287 Md. 595, 415 A.2d 255 (1980), and its progeny. Alternatively, if the binding arbitration provision in the Charter is valid, but the revised implementing provisions in the

---

1. Specifically, the Petitioners are O'Brien Atkinson, IV, David Belisle III, Patricia Belisle, Deborah Sosnoski, Michael Sosnoski, Fraternal Order of Police, Lodge 70, Anne Arundel County Professional Fire Fighters, IAFF Local 1563, Anne Arundel County Battalion Chiefs Association, Anne Arundel County Police Lieutenants Association, International Brotherhood of Police Officers, Local 802, Truck Drivers, Helpers, Taxicab Drivers, Garage Employees and Airport Employees Local Union No. 355 affiliated with International Brotherhood of Teamsters, Anne Arundel County Detention Sergeants Association affiliated with International Union of Police Associations Local 141, AFL–CIO, Fraternal Order of Anne Arundel Detention Center Officers and Personnel, Inc., Communications Workers of America, Local 2911, Anne Arundel County Police Supervisors' Association, International Brotherhood of Police Officers, Local 799, and Anne Arundel County Sheriff's Sergeants Association, National Union of Law Enforcement Associations, Local 777.

2011 amendments to the County Code are invalid, the County seeks a declaration that the 2003 and 2011 Code provisions dealing with binding arbitration destruct under uncodified § 3 of the 2011 ordinance.

The Circuit Court for Anne Arundel County held that the 2002 Charter amendment violated the Maryland Constitution. We granted Petitioners' application for certiorari and the County's Conditional Cross–Petition for certiorari prior to consideration of the case by the Court of Special Appeals. *Atkinson v. Anne Arundel County*, 424 Md. 291, 35 A.3d 488 (2012).

For the reasons that follow, we shall hold that the 2002 Charter amendment binds the County Council, and that portions of the 2011 ordinance, as well as its uncodified Section 3, violate the Charter and are invalid.

### *Historical and Legal Background*

The tension between public employee unions and local governments, particularly those bound by an executive budget system, has surfaced in Maryland appellate cases since at least *Mugford v. Mayor & City Council of Baltimore*, 185 Md. 266, 44 A.2d 745 (1945). Review of these cases, and of the legal background of the Charter and ordinances of the County, is necessary to an understanding of the parties' arguments in the case before us.

### *Pre–2002 Charter Amendment*

*Mugford* involved an agreement between a Teamsters' local union and the Department of Public Works of Baltimore City, purportedly acting on behalf of the City. In a taxpayers' action challenging the agreement, the trial court held it to be void, and no appeal was taken from that ruling. The trial court, however, concluded that the Central Payroll Bureau could collect union dues by payroll deduction from any employee who voluntarily agreed. This Court agreed, but it also observed:

"The City has no right under the law to delegate its governing power to any agency. The power of the City is

prescribed in its charter, and the City Charter constitutes the measure of power that is possessed by any of its officials. To delegate such power to an independent agency would be a serious violation of the law. To recognize such delegation of power in any City department might lead to the delegation of such power in all departments, and would result in the City government being administered regardless of its charter."

*Id.* at 271, 44 A.2d at 747.

The first case to reach this Court questioning binding arbitration between a local government and its employees was *Maryland Classified Employees Ass'n. v. Anderson*, 281 Md. 496, 380 A.2d 1032 (1977). Harford County had, by *ordinance*, provided for binding arbitration, pursuant to which an award was made in May 1975. Harford County did not fully implement the award, and certain employees sued to enforce it. This Court decided "that compensation of employees of a charter county may not be committed to binding arbitration unless so authorized by a public general law of Maryland or the organic law of that county." *Id.* at 497, 380 A.2d at 1032. Applying the rationale of *Mugford*, we said that the Harford County "ordinance in question plainly attempted to bind the County in the exercise of legislative discretion over compensation of its public employees." *Id.* at 511, 380 A.2d at 1040. This could not be done "without being authorized to do so by public general law or by the County Charter." *Id.* at 513, 380 A.2d at 1041.[2]

---

**2.** The Court in *Anderson* initially considered whether Harford County could challenge its own ordinance. On that point, the Court, speaking through Judge Orth, concluded as follows:

"Ordinarily, we would be loathe to exercise our discretion so as to allow a County to challenge the validity of its own ordinances with respect to ministerial duties. But in the particular circumstances here, where the duties involved, ordinarily discretionary, are ministerial because of the binding arbitration provision, we are inclined to permit the challenge. It is manifest that the validity of a binding arbitration provision of a collective bargaining law which concerns compensation of public employees is a matter of substantial public importance. Absent public general law in the field, it is likely to be a

In *Griffith v. Wakefield,* 298 Md. 381, 470 A.2d 345 (1984), firefighters employed by Baltimore County, inspired by *Anderson,* initiated, by voter petition, an amendment to the Baltimore County Charter that spelled out a system of binding arbitration. Taxpayers challenged the Charter amendment in an action that was decided after the voters had adopted the amendment. The challenge asserted that the amendment violated Maryland Constitution, Article XI–A, § 3, under the principles articulated in *Cheeks v. Cedlair Corp.,* 287 Md. 595, 415 A.2d 255, to which we now turn.

In *Cheeks,* proponents of rent control for Baltimore City residential properties had initiated, by voter petition, an amendment to the City Charter that created a complete program for adopting and enforcing rent controls. The Charter amendment, as reproduced in Appendix A to the opinion in *Cheeks,* covers seventeen pages. *Id.,* 415 A.2d at 265–73. Article XI–A, § 3, however, provides that "every charter [formed under that article] shall provide for an elective legislative body in which shall be vested the law-making power of said City or County." Upon the adoption of a charter by a county, its County Council, "subject to the Constitution and Public General Laws of this State, shall have full power to enact local laws." *Cheeks* held that § 3, and other sections of Article XI–A, required that the proposed amendment be " 'charter material.' " *Id.* at 608, 415 A.2d at 262. This Court explained:

"[A] charter amendment within the context of Art. XI–A is necessarily limited in substance to amending the form or

question which will frequently arise in the relationship between public employee and government employer. The implementation of such a binding arbitration award may require an increase in taxes or give rise to fiscal and budgetary problems affecting third parties. Moreover, it appears that the structure of bureaucratic authority will not be seriously disrupted in this instance by permitting the challenge. These considerations, we believe, outweigh contrary interests. In sum, we think the time is ripe and this case appropriate to determine whether a binding arbitration provision with respect to the compensation of public employees is valid, and we shall proceed to make such determination."
281 Md. at 505–06, 380 A.2d at 1037.

structure of government initially established by adoption of the charter. A charter amendment, therefore, differs in its fundamental character from a simple legislative enactment. Its content cannot transcend its limited office and be made to serve or function as a vehicle through which to adopt local legislation.

"The charter amendment proposed in this case was intended, not simply to create a new City agency with authority over matters pertaining to landlords and tenants, but rather to establish a comprehensive system for regulating rents within the City's residential housing market. . . .

"We think it clear that the amendment is essentially legislative in character. Considered as a whole, the amendment is not addressed to the form or structure of government in any fundamental sense and is not, therefore, 'charter material,' as the lower court so succinctly stated. Unless §§ 1, 5 or 6 of Art. XI–A, either explicitly or implicitly, otherwise permit the voters to 'legislate' by charter amendment, notwithstanding §§ 2 and 3 of Art. XI–A, and to thereby directly exercise the City's police or general welfare powers, the amendment is invalid for insufficiency of subject matter in the sense that it is not a charter amendment within the contemplation of § 5." [3]

*Id.* at 607–08, 415 A.2d at 261–62 (citation omitted).

Returning to *Griffith v. Wakefield,* 298 Md. 381, 470 A.2d 345, the Baltimore County firefighters case, this Court applied *Cheeks* to invalidate the binding arbitration amendment to the Baltimore County Charter. The parties to the case now before us find support in different portions of the opinion in *Griffith.* The Petitioners refer us to the following passage:

"The Court's decision in *Cheeks* is dispositive of the issue presented in the case at bar. Like the charter amendment in *Cheeks,* the proposed charter amendment in the present

---

**3.** Article XI–A, § 5 provides, with respect to a charter county, that amendments to the Charter "may be proposed by a resolution of the . . . Council of the county, or by petition signed by" a specified number or percentage of registered voters.

case prescribes 'in lengthy detail' [footnote omitted] an entire system of binding arbitration for a select group of county employees; it leaves nothing for the determination of the County Executive or the County Council."

*Id.* at 386, 470 A.2d at 348. The *Griffith* opinion then presented a two-page synopsis of the detail of the Baltimore County binding arbitration amendment.

Anne Arundel County, on the other hand, emphasizes the passage set forth below:

"If the proposed Baltimore County charter amendment had merely *authorized* the Baltimore County Council to enact a system of binding arbitration with regard to the compensation of Baltimore County employees, and if, pursuant to that authorization, the Baltimore County Council had exercised its discretion to enact *an ordinance* containing provisions similar to those in the proposed charter amendment now before us, the present case would be distinguishable from *Cheeks.* Under those circumstances, we would be required to decide the question which was 'assume[d]' but not decided in *Anderson.*[4] In the present case, however, the proposed charter amendment did not authorize the County Council to enact binding arbitration legislation for county employees. It did not authorize any decisions by the constitutional legislative body. Instead, under the proposal, the charter itself would contain all of the law on the subject, and the Baltimore County Council would be deprived of all decision-making authority concerning the subject. Nothing

---

4. The *Anderson* reference is to 281 Md. at 512, 380 A.2d at 1041, where this Court said, "We assume, but have no need to decide, that, in light of the above cited cases on the point, had a State public general law or the County Charter authorized the binding arbitration provision enacted by the County Council, the provisions would be valid." As previously noted, the *Anderson* opinion is introduced by this statement: "We decide on this appeal that compensation of employees of a chartered county may not be committed to binding arbitration unless so authorized by public general law of Maryland or the organic law of that county." *Id.* at 497, 380 A.2d at 1032.

in the *Anderson* case supports the validity, under Art. XI–A, of such a charter provision."

*Id.* at 389–90, 470 A.2d at 350.

Also bearing mention are two additional decisions of this Court that preceded the adoption in 2002 of the Anne Arundel County Charter amendment that is at issue here. *Anne Arundel County v. Fraternal Order of Anne Arundel County Det. Officers & Pers.,* 313 Md. 98, 543 A.2d 841 (1988) ("the Correctional Officers Case"), involved a County ordinance providing for arbitration of certain issues arising out of collective bargaining. The County had established a new position, carrying the rank of lieutenant, for the Detention Center, but the County and the collective bargaining representatives were unable to agree whether the position was management or part of the bargaining unit. When the County refused to arbitrate the issue, the bargaining representatives sought to compel arbitration. That case held that "the determination of whether positions should be included in or excluded from the representation unit is not so determinative of employee compensation as to be an inappropriate subject for arbitration in the absence of authority granted by the Charter or General Assembly." *Id.* at 116, 543 A.2d at 850. In discussing the issue, this Court held that the ordinance was sufficient authorization for the County to enter collective bargaining agreements and engage in arbitration, and that a charter provision or public general law was not needed. *Id.* at 113–14, 543 A.2d at 849. On the other hand, "authorization by public general law or charter provision consistent with Art. XI–A of the Maryland Constitution" is required for a charter county to "delegate to an arbitrator a discretionary governmental power or function which the charter vests in the county executive and county council." *Id.* at 111, 543 A.2d at 848.

*Freeman v. Local 1802, Am. Fed'n of State, County & Mun. Employees Council 67,* 318 Md. 684, 569 A.2d 1244 (1990), was a mandamus action against the County Executive of Harford County seeking to compel him to sign a collective bargaining agreement that had been negotiated pursuant to a Harford County ordinance. The Executive contended that a charter

provision or public general law was required for Harford County to bargain collectively. We held that that contention was incorrect. *Id.* at 691, 569 A.2d at 1247. With respect to the issue now before us, we pointed out that the Correctional Officers Case had "reaffirmed the holdings in our prior cases that, absent authorization from the county charter or State public general law, the local ordinance could not validly provide for the delegation to others 'of certain duties involving the exercise of discretion specifically assigned by a county charter to the county executive and council.' 313 Md. at 115, 543 A.2d at 850." *Id.,* 569 A.2d at 1247. The decision in *Freeman,* applying the law of mandamus, ultimately concluded that mandamus would not lie.

### The 2002 Charter Amendment

In 1988, § 811 was added to the Anne Arundel County Charter to provide that

"[e]mployees in the classified service shall have the right to organize and bargain collectively through representative employee organizations of their own choosing as provided by ordinance of the County Council."

The Anne Arundel County Charter, in § 1203, also provides for the appointment by the County Council of a Charter Revision Commission after the publication of each decennial census. In its report of May 20, 2002, the 2000 census Charter Revision Commission (CRC) recommended that a new provision be added to Art. VIII in the Charter. The report stated:

"Authorize binding arbitration for police, fire and other public safety contracts.

"*Reasons:* The CRC feels that binding arbitration should be provided to public safety employees as a matter of fairness. This process provides for a skilled, neutral, and mutually agreed upon arbitrator, whose final decision will be based upon financial condition of the County, and the reasonable interest[s] of the affected employees, and all other relevant factors (Vote was 3 for, 2 against).

"*Dissent:* Newton Gentry and Michael Gilligan believe that binding arbitration will leave a County financial decision in the hands of outside party, causing possible constraints on needed County services because of the existing tax cap."

The County Council agreed with the CRC majority. At the Council meeting of August 5, 2002, the agenda included two resolutions proposing Charter amendments. Resolution No. 44–02 was described in the Minutes as follows:

"Charter Amendment—Binding Arbitration for Law Enforcement Employees—Resolution proposing an amendment to the Charter of Anne Arundel County to provide that the County Council shall be required to adopt an ordinance providing for binding arbitration of disputes between the County and the Uniformed Officers of the Police Department, Sheriff's Department, and Office of Detention Facilities[.]"

One council member stated that it was "important for our Law Enforcement Employees to be granted the opportunity for binding arbitration." Another council member stated that "binding arbitration is a fair way to resolve the differences that may occur during labor negotiations." The seven members of the Council unanimously adopted Resolution 44–02.

A companion Resolution, 45–02, providing for a Charter amendment for "Binding Arbitration for Uniformed Firefighters," was also unanimously adopted, with two members having recused themselves.

As proposed by Resolution 44–02, the voters adopted the 2002 Charter Amendment that is set forth below:

"**Sec. 812. Binding arbitration for law enforcement employees and for uniformed firefighters of the Fire Department.**

"(a) In addition to the right granted to County employees in Section 811 of this Article to organize and bargain collectively, the County Council *shall provide* by ordinance *for binding arbitration* with authorized representatives of the appropriate employee bargaining unit in order to resolve labor disputes with the County's law enforcement

employees. The ordinance shall provide for the appointment of a neutral arbitrator by the parties to the arbitration *who shall issue a binding decision to be implemented as part of the following year's budget process* and which shall take into account the financial condition of the County and the reasonable interests of the law enforcement employees and the county relating to the terms and conditions of employment. Law enforcement employees shall be uniformed officers of the Police Department, Sheriff's Department, and Office of Detention Facilities. Any ordinance that is enacted shall prohibit strikes or work stoppage by the law enforcement employees."

(Emphasis added). Charter § 812(b) makes the same provision for uniformed firefighters.[5]

To implement Charter § 812, the County Council adopted Bill 1–03, which became § 6–4–111 of the Anne Arundel County Code (2004) consisting of subsections (a) through (r). Under Bill 1–03, if an impasse exists on March 15 of any fiscal year, the parties may agree to a non-binding, confidential mediation but must commence arranging for binding arbitration as well. Provision is made for selecting an arbitrator and an alternative arbitrator. The powers and duties of the neutral arbitrator are set forth, time limits are established, and a "baseball" type of award is to be rendered. Subsection (m) provides, in relevant part, as follows:

"The final written award issued by the neutral arbitrator . . . and the memorandum of agreed issues shall be final and binding upon the County and the Uniformed Public Safety Exclusive Representative and shall be implemented as part of the budget process for the appropriate fiscal years."

Either party may move to vacate the award by an action in the Circuit Court for Anne Arundel County.

---

5. Question D, adopting Charter § 812(a), was approved by 78% of the votes cast on the question. The vote on Question E, adopting Charter § 812(b), was approved by 78.5%.

## The 2011 Ordinance

On February 1, 2010, the Court of Special Appeals decided *Wicomico County Fraternal Order of Police, Lodge 111 v. Wicomico County*, 190 Md.App. 291, 988 A.2d 555 (2010). By a voter initiative, pursuant to Maryland Constitution, Article XI–A, § 5, the voters had amended the Wicomico County Charter at the November 2006 election to provide as follows:

" 'The Wicomico County Council shall provide by law for collective bargaining with binding arbitration with an authorized representative of the Wicomico County Sheriff's Office deputies. Any law so enacted shall prohibit strikes or work stoppage by deputies. The County Council shall provide by law a labor code for sworn employees of the Wicomico County Sheriff's Office to effectuate this charter provision. This section shall supercede any conflicting provisions of the Wicomico County Charter or other Wicomico County provisions.' "

*Id.* at 295, 988 A.2d at 557.

Thereafter, the Wicomico County Council passed an ordinance which provided that the Executive was bound by an arbitrator's award, but that the County Council was not. *Id.* at 296, 988 A.2d at 557. Aggrieved employees sought a judgment declaring that the Charter amendment was binding on Wicomico County and that the ordinance did not comply with the Charter. Wicomico County counterclaimed for a declaration that the Charter amendment was unconstitutional. The circuit court and the Court of Special Appeals agreed with Wicomico County. The intermediate appellate court concluded that the amendment did not change the form and structure of government. "[R]ather, it required the Council to legislate on the subject of personnel matters affecting a certain group. The Amendment imposed a binding system of arbitration applicable to one group of County employees and was legislative in nature." *Id.* at 302, 988 A.2d at 561. The court also considered that "[i]f the Charter Amendment had merely authorized the Wicomico County Council to enact a system of binding arbitration, and the County Council exercised its

discretion to enact a law pursuant to that authorization, the Council would not have been deprived of all decision-making authority," citing *Save Our Streets v. Mitchell,* 357 Md. 237, 254, 743 A.2d 748[, 758] (2000). "The Charter Amendment, however, mandated that the Council enact legislation, with or without County Executive approval." 190 Md.App. at 302–03, 988 A.2d at 561. There was no application for certiorari from this Court of Special Appeals decision.

The infighting next moved to the General Assembly. Senate Bill 1123 of the 2010 session, as introduced, would have provided that a county or municipal corporation may adopt a local law or ordinance that allows for binding arbitration. The bill was amended in the course of passage to result in an uncodified, retroactive, emergency, public general law, enacted as Chapter 651 of the Acts of 2010. Section 1 of Chapter 651 in relevant part provides that "a county or municipal corporation that has adopted a local law or ordinance that allows for binding arbitration ... is retroactively authorized to adopt a local law or ordinance that allows for binding arbitration...." Section 2 of Chapter 651 directs that it be construed to apply "only retroactively and may not be applied or interpreted to have any effect on or application to any local law or ordinance that allows for binding arbitration enacted after the effective date of this Act."

The 2011 ordinance that is the object of the Petitioners' complaint in the instant matter was enacted by Council Bill 4–11. It amended, *inter alia,* Anne Arundel County Code, § 6–4–111, subsection (m) to provide in relevant part:

> "Except for those provisions that require an appropriation of funds or the enactment of legislation to implement, the final written award issued by the neutral arbitrator ... and the memorandum of agreed issues shall be final and binding upon the County and the Uniformed Public Safety Exclusive Representative."

Other features of Council Bill 4–11 to which Petitioners object are subsections (u) and (v). They read:

"(u) **Powers reserved to the County Council.** The County Council shall not be required to appropriate funds or enact legislation necessary to implement a final written award, and nothing in this section shall be construed as otherwise limiting the budgetary and legislative powers of the County Council set forth in the County Charter.

"(v) **Governing provisions.** The wages, hours, working conditions, and other terms and conditions of employment for employees represented by a Uniformed Public Safety Exclusive Representative shall be governed by:

"(1) the provisions of a final written award that do not require an appropriation of funds or the enactment of legislation to implement as described in subsection (m); and

"(2) the other provisions of a final written award that the County Council has approved by the appropriation of funds and the enactment of legislation as described [in] subsections (t) and (u)."

Bill 4–11 also contains an uncodified Sec. 3 that in relevant part reads as follows:

"[N]either the provisions of Section 2 of this Ordinance nor the provisions of § 6–4–111 of the County Code (2005, as amended) as amended by this Ordinance are severable, and if any provision of Section 2 of this Ordinance or the application thereof to any person or circumstance is held invalid for any reason in a court of competent jurisdiction, no other provision of § 6–4–111 of the County Code (2005, as amended) may be given effect and § 6–4–111 of the County Code (2005, as amended) in its entirety shall be deemed repealed by operation of law without the necessity of further action by the County Council, and the provisions of § 6–4–110 of the County Code (2005, as amended) thereafter shall apply to all impasses between the administration and an exclusive representative."[6]

---

**6.** Bill 4–11 was amended by the County Council to delete Sec. 3. That amendment was vetoed by the County Executive, and that veto was not

In this case, the County asserts that Sec. 3 was necessary because of Chapter 651 of the Acts of 2010. If Bill 4–11 were held invalid, the concern of the County Council was that Bill 1–03, the prior form of Code § 6–4–111, would be reinstated and enjoy the retroactive authorization of Chapter 651 of the Acts of 2010.

## Questions Presented

We distill from the questions presented in the briefs of the parties three principal questions.

I. Does § 812 of the County Charter apply to the County Council, so as to void provisions in Sec. 2 of Bill 4–11?

II. If so, does § 812 of the County Charter violate Maryland Constitution, Article XI–A, § 3?

III. If the answer to I is "yes," and the answer to II is "no," is Sec. 3 of Council Bill No. 4–11 invalid for violating § 812 of the County Charter? [7]

---

overridden by the County Council. In his veto message, the County Executive said in part:

"Section 3 is necessary to preserve the role of the County Council as the final authority on the appropriation of public funds for the compensation of County employees and the consequences of such appropriations on the remainder of the County budget."

Code § 6–4–110 establishes an impasse procedure that does not include binding arbitration.

7. The questions presented in the Petitioners' brief are:

"1. As Article XI–A, § 1 of the Maryland Constitution authorizes charter provisions concerning a county's system for budgeting and appropriating revenues, was it lawful to amend the Anne Arundel County Charter, through charter revision, to direct the County Council to provide by ordinance for binding arbitration of labor disputes?

"2. Is Anne Arundel County Bill No. 4–11 unlawful as its terms failed to comply with §§ 812(a) and 812(b) of the County Charter by deleting from Section 6–4–111 of the County Code the provisions that provide for binding arbitration of labor disputes?

The questions presented in the County's brief are:

"[Petition]

"A. Is § 6–4–111 of the Anne Arundel County Code as amended by Section 2 of Anne Arundel County Council Bill No. 4–11 consistent with § 812 of the Anne Arundel County Charter?

## Standard of Review

There are no facts in dispute in this case. The standard of review is whether the declaratory judgment was correct as a matter of law. *See Catalyst Health Solutions, Inc. v. Magill,* 414 Md. 457, 471–72, 995 A.2d 960, 968 (2010). As applied to Council Bill 4–11, the County submits that we must determine whether the County Council, in enacting Bill 4–11, was acting within the "legal boundary" of Charter § 812. However phrased, the legal issue is the proper construction of Charter § 812.

## Discussion

The parties disagree on the effect of Charter § 812 on the respective roles of the County Executive and County Council in the budget process. Under Charter § 706, the County Executive is required to submit to the County Council, not later than seventy-five days prior to the end of the fiscal year, the proposed County budget for the ensuing fiscal year. Section 706(a) provides in relevant part that

"[t]he proposed current expense budget shall contain . . . (4) an estimate of the several amounts which the County Executive deems necessary for conducting the business of the

---

"B. Does § 812 of the Anne Arundel County Charter violate Article XI–A, § 3 of the Maryland Constitution?

"C. Did the adoption of § 812 of the Anne Arundel County Charter constitute the exercise of direct legislative initiative by the electorate of the County in violation of Article XI–A, § 3 of the Maryland Constitution despite the fact that it was proposed by resolutions adopted by the Anne Arundel County Council?

"[Cross–Petition]

"D. Is § 6–4–111 of the Anne Arundel County Code repealed by operation of law in accordance with Section 3 of Anne Arundel County Council Bill No. 4–11 because the changes made to binding arbitration by Section 2 of Bill No. 4–11 are invalid for any reason?

"E. Is Chapter 651 of the 2010 Laws of Maryland applicable only to the local laws or ordinances of chartered counties, or does it also apply to provisions of county charters including § 812 of the County Charter?"

Question E has not been presented by any argument of the Petitioners in this Court.

County to be financed from and not to exceed estimated revenues for the ensuing fiscal year[.]"

Under Charter § 709, "the County Council may decrease or delete any items in the budget," with certain exceptions not relevant here.

Petitioners submit that the County Executive must include in the budget, and the County Council must approve, appropriations necessary to comply with a binding arbitration award. With respect to the County Executive, Bill 4–11 provides that, if a final award is based on the final offer of the employees' representative, and if the County Council so requests, the County Executive is to submit to the County Council recommendations for amending the budget in order to fund that final written award. Code § 6–4–111(s)(4) (2011). Under Bill 4–11, the County Council may or may not choose to fund the final award.

The County contends that Bill 4–11 simply construed Charter § 812 to retain the Council's power to reduce or delete appropriations and that that construction is necessary to avoid rendering Charter § 812 unconstitutional. We do not agree.

Charter § 812 requires the County Council to "provide by ordinance for binding arbitration," and to provide for "the appointment of a neutral arbitrator ... who shall issue a binding decision to be implemented as part of the following year's budget process[.]" In the context of municipal government employee labor relations, the terms quoted from Charter § 812 have a plain meaning.

The Harford County ordinance involved in *Anderson* spelled out a final step in dispute resolution, in relevant part, reading:

"'In the event that a dispute remains unresolved after thirty (30) days of mediation, the County Executive shall submit the dispute to *binding arbitration.... The decision of the arbitration board shall be binding on both parties.* (Emphasis added).'"

*Anderson,* 281 Md. at 507–08, 380 A.2d at 1038. Referring to this language, we said that "[t]he County ordinance in question plainly attempted to bind the County in the exercise of

legislative discretion over compensation of its public employees." *Id.* at 511, 380 A.2d at 1040.

The Anne Arundel County Charter provision before us is even more clear than that in the *Anderson* case. As demonstrated above, the County Council is an integral part of the budget process, and § 812 requires that the neutral arbitrator's "binding decision be implemented as part of the following year's budget process."

In addition to relying on Charter § 709, the County points to Charter § 801 that provides, in relevant part, for

"a classification and pay plan, enacted by ordinance, for all positions in the classified service. The classification plan shall include minimum qualifications for each class of position and the pay plan shall allocate such class of positions to a salary range."

The County says that charter provisions like §§ 709 and 801 cannot be amended by implication. But, "if two statutes contain an irreconcilable conflict, the statute whose relevant substantive provisions were enacted most recently may impliedly repeal any conflicting provision of the earlier statute." *State v. Harris,* 327 Md. 32, 39, 607 A.2d 552, 555 (1992). The County Council is part of the government of Anne Arundel County, Maryland. An award in arbitration cannot be binding and not binding on the County at the same time and in the same respect. There is an irreconcilable conflict between the plain language of Charter § 812 and provisions in Sec. 2 of Bill No. 4–11 under which the County Council asserts a power to modify or abrogate a binding award.

In *State v. Ghajari,* 346 Md. 101, 695 A.2d 143 (1997), this Court stated:

" 'It is well settled that when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute.' *Farmers & Merchants [Nat'l.] Bank [v. Schlossberg],* 306 [Md. 48,] 63, 507 A.2d [172,] 178 [ (1986) ] (holding general enactment impliedly repealed by specific enactment). In such a situa-

tion, the specific statute is controlling and the general statute is repealed to the extent of the inconsistency. *See* [*Criminal Injuries Comp. Board v.*] *Gould,* 273 Md. [486,] 495, 331 A.2d [55,] 61 [ (1975) ]. Thus, when reconciling a specific and a general statute, a court should give effect to the specific statute in its entirety and should retain as much of the general statute as is reasonably possible. *See* 1A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION §§ 23.06, 23.09, 23.16 (5th ed. 1993)' "

*Id.* at 116, 695 A.2d at 150. Thus, if an impasse in bargaining with County employees covered by Charter § 812 were to result in binding arbitration, and the neutral arbitrator chose the employees' final offer, and § 812 were still in effect, the final award would be binding on the County, which includes the County Council.[8]

■ The County directs our attention to County Code, Article 6, "Personnel," Title 4, "Employee Relations," where § 6–4–101(1) defines "Administration" to mean "the County Executive and officers and agents under the County Executive's supervision." The County represents that collective bargaining negotiations are conducted between the employee representatives and the Administration. From this, the County concludes that Charter § 812 binds only the Administration. This argument ignores the requirement in § 812 that the neutral arbitrator's binding decision "be implemented as part of the following year's budget process." The argument

---

8. The County's argument, that Charter § 812 does not repeal by implication, based on inconsistency, other sections of the Charter, is an argument that itself is inconsistent. One of the provisions of Council Bill 4–11 is Code § 6–4–111(t). It provides that if the County Council decides to fund a final written award that is based on the final offer of the employees' representative, the County Council may fund that award without an amendment to the budget proposed by the County Executive. The County argues that this provision is authorized by Charter § 812, interpreted to make a final award binding only on the County Executive, but not binding on the County Council. Under the County's analysis, Charter § 812 repeals by implication part of Charter § 709 providing that the "County Council shall have no power to ... increase any expenditure recommended by the County Executive for current ... purposes."

violates the rule of construction that, ordinarily, no words are to be omitted, and effect is to be given to all words in the statute or charter.

We are referred by the County to the Baltimore County Charter and Code. There, § 801 of the Charter provides that "[t]he county council is further authorized to, and shall by law, provide for a system of binding arbitration by a neutral arbitrator to resolve disputes" arising out of collective bargaining with certain public safety employees. The Baltimore County Code, § 4–5–505, "BINDING ARBITRATION," subsection (i) provides that "[t]he County Council is not bound by any decision made under this section and may act upon the submitted legislation to implement the memorandum of understanding under this section in accordance with the provision of the Charter." The Baltimore County Charter, of course, is not before us, and we need not construe "a system of binding arbitration" as the quoted terms appear in the Baltimore County Charter § 801. It is sufficient to note for present purposes that the Baltimore County Charter does not require the "binding decision to be implemented as part of the following year's budget process."

## Article XI–A

In addressing this issue, we assume, *arguendo*, that a charter amendment recommended by a Charter Revision Commission and proposed by the legislative body is subject to the requirement that the amendment be charter material to the same extent as if the amendment had been initiated by a petition of the voters.

■■ We consider it to be settled that binding arbitration is an appropriate subject matter for inclusion in a county charter. That is the teaching of *Anderson*, 281 Md. 496, 380 A.2d 1032, the Correctional Officers Case, 313 Md. at 111, 543 A.2d at 847–48, and *Freeman*, 318 Md. at 691, 569 A.2d at 1247. The whole point in placing Charter § 812 before the voters was to obtain authorization for including provision for binding arbitration in the County's "constitution." Further,

§ 812 does not run afoul of Constitution, Article XI–A, by including what amounts to an entire statute in the Charter and, thus, § 812 avoids the defect in the Baltimore City Rent Control Charter initiative struck down in *Cheeks*, 287 Md. 595, 415 A.2d 255, and in the Baltimore County Firefighters Charter initiative struck down in *Griffith*, 298 Md. 381, 470 A.2d 345.

The County submits, however, that the law on "charter material" has been clarified by *Save Our Streets v. Mitchell*, 357 Md. 237, 743 A.2d 748 (2000), involving two cases decided in one opinion. One case, *Mitchell*, involved a voter initiative for an amendment to the Montgomery County Charter that would prospectively prohibit speed bumps and allow the County one year within which to remove previously installed speed bumps. Holding that the proposed amendment violated Maryland Constitution, Article XI–A, the circuit court prohibited placing the measure on the ballot, and this Court agreed.

In the other case, *Hiter*, decided at the same time, voters in Harford County petitioned for a referendum on a charter amendment establishing standards for "adequate public facilities." The amendment provided for a one-year moratorium on building and grading permits and on approval of subdivision and site plans, following which, any development that did not meet the standards set forth in the charter amendment, unless exempted, would be prohibited.

In analyzing these initiatives, this Court said:

"[T]he length and detail of a proposed charter amendment are not dispositive as to whether the proposed amendment constitutes legislation or proper charter material. An important consideration is the degree to which the county council retains discretion and control regarding an area under its authority pursuant to Article XI–A of the Maryland Constitution."

*Id.* at 253, 743 A.2d at 757. The amendments in the two cases "would as completely remove any meaningful exercise of discretion from the County Council as would have the amendments in *Cheeks* and *Griffith*." *Id.*

In *Save Our Streets*, this Court quoted from *Griffith*, 298 Md. at 389–90, 470 A.2d at 350, as follows:

" 'If the proposed Baltimore County Charter amendment had merely *authorized* the Baltimore County Council to enact a system of binding arbitration . . . and if, pursuant to that authorization, the Baltimore County Council had exercised its discretion to enact *an ordinance* containing provisions similar to those in the proposed Charter amendment . . ., the present case would be distinguishable from *Cheeks* . . . . In the present case, however, the proposed Charter amendment did not authorize the County Council to enact binding arbitration legislation for County employees. It did not authorize any decisions by the constitutional legislative body. Instead, under the proposal, the Charter itself would contain all of the law on the subject, and the Baltimore County Council would be deprived of all decision-making authority concerning the subject[.]' "

*Save Our Streets*, 357 Md. at 254, 743 A.2d at 757–58.

The quoted language from *Griffith* employs a technique used in writing judicial opinions when the operative standard is a question of degree, in this case, the extent to which discretion of the legislative body is precluded by the proposed Charter amendment. *Griffith* illustrated a proper recognition of the Council's constitutional law-making power, Const., Art. XI–A, § 3, by hypothesizing a Charter amendment providing that the Council may adopt binding arbitration and leaving to the Council the policy question of whether, and if so, how, binding arbitration should operate. On the other hand, the proposed Charter amendment that was before the Court in *Griffith* did not authorize binding arbitration because it did not authorize any decisions by the legislative body. Rather, the Charter amendment contained all of the law on the subject.

The question presented in the case before us falls somewhere between the two *Griffith* examples. The County Charter directs the County Council to adopt a binding arbitration ordinance that would be implemented in the budget process.

The Charter leaves fleshing out of the directive to the County Council. Authorization for binding arbitration can only be achieved by a public general law or by a Charter provision. Whether some portion of the County Council's role in the budget process is to be transferred to a neutral arbitrator, in the event of an impasse in collective bargaining with public safety employees, affects the form and structure of government. To say that the voters of a county, exercising their power to amend the Charter, cannot direct that their policy decision be implemented by the County Council would be to hold that only the County Council ultimately can decide whether binding arbitration is County policy.[9] That is contrary to the holdings in *Anderson*, the Correctional Officers Case, and *Freeman*.

■ The voters' directive in County Charter § 812, for the Council to implement, in some fashion, binding arbitration in the budget process, does not implicate, on analysis, the law-making power of the Council under Const., Art. XI-A, § 3. ("Every charter ... shall provide for an elective legislative body in which shall be vested the law-making power of said ... County."). The power of the County Council, under the County Charter, to reduce or delete appropriations in the Executive's budget, is impliedly derived from Const., Art. XI-A, § 1, setting forth the process for preparing and adopting a Charter.

*Annapolis v. Anne Arundel County*, 347 Md. 1, 698 A.2d 523 (1997), explains the distinction. Chapter 1041 of the Acts of 1945 had directed the County to pay to Annapolis one-

---

9. That is the position adopted by the dissenting opinion in the instant matter when it says:

> "Section 812 does not leave any discretion in the County Council with regard to whether it will fund any award made by an arbitrator, or when and how. Thus, the County Council *does not* retain control or discretion over its budget, which is an important aspect of its law-making power."

Dissent Op. at 756–58, 53 A.3d at 1203–04. If Constitution, Art. XI-A, requires that the legislative body must have discretion to refuse to fund a binding arbitration award, then there can never be binding arbitration.

seventh of the amount remitted by the State to the County from any new sources of revenue. In 1958, a new tax on cigarettes was imposed. The County adopted its Charter in 1964. Eventually payments by the County to Annapolis ceased. In the resulting litigation, this Court held that the adoption of a Charter had impliedly repealed Chapter 1041, a public local law.

■ Chapter 1041 was a law dealing with appropriations. Article XI–A, § 3 authorizes a Council to repeal local laws on matters covered by the Express Powers Act, Maryland Code (1957, 2011 Repl.Vol.), Article 25A, § 5, but the express powers do not include appropriations. Nevertheless, " § 1 of Article XI–A authorizes charter provisions concerning the organization and structure of the county government including the method or system for making governmental decisions." *Annapolis,* 347 Md. at 15, 698 A.2d at 529 (citing *Ritchmount Partnership v. Board of Supervisors of Elections for Anne Arundel County,* 283 Md. 48, 388 A.2d 523 (1978) (holding that Art. XI–A authorized the County's Charter to provide for a referendum on Council ordinances)).

Pertinent to the question of decision-making on matters of appropriations, this Court in *Annapolis* further said:

"This Court has taken the position that the method or system for budgeting and appropriating revenues set forth in a county's charter, including the executive budget system in effect in several counties, constitutes proper charter material under Article XI–A, § 1. The budgetary and appropriation system 'is a fundamental aspect of the form and structure of' a home rule county's government. *Board [of Supervisors of Elections of Anne Arundel County] v. Smallwood,* 327 Md. 220, 241, 608 A.2d 1222, 1232 (1992)."

*Id.* at 15, 698 A.2d at 530.[10]

Once the voters, acting under Const. Art. XI–A, § 1, made the policy decision, Charter § 812 left all of the detail of

10. To support the statement that County Council control over "its" budget "is an important aspect of its law-making power," the dissenting

implementation to the Council for the exercise of its Art. XI–A, § 3 law-making power in Bill 1–03. It covered possible mediation, each step in the selection of the neutral arbitrator, timing, the powers of the arbitrator, receipt of final offers of each party, ten factors to be considered by the arbitrator after receiving evidence, the final, binding award, possible revision thereof by agreement, post-hearing motion or court action, and implementation of the award as part of the budget process. We hold that Charter § 812 did not unconstitutionally preclude the exercise of the County Council's law-making discretion.

Because *Wicomico County Fraternal Order of Police, Lodge 111 v. Wicomico County,* 190 Md.App. 291, 988 A.2d 555 (2010), is substantially at odds with the views expressed herein, that opinion is disapproved.[11]

---

opinion quotes from *City of Annapolis v. Anne Arundel County,* 347 Md. 1, 14, 698 A.2d 523, 529 (1997). The full paragraph that includes the quote reads:

"The general authority of charter counties to budget and appropriate funds is not expressly granted by the Express Powers Act or by any other enactment of the General Assembly. Under our cases, budget bills and appropriation laws by charter counties 'are none of them " 'legislation' " as the word is used in [Article XI–A, § 3].' *Schneider v. Lansdale,* [191 Md. 317, 328, 61 A.2d 671, 676 (1948)]. *See Scull v. Montgomery Citizens,* [249 Md. 271, 274, 239 A.2d 92, 93–94 (1968)]. Instead of constituting an express power of charter counties to enact legislation, within the meaning of Article XI–A, §§ 3 and 4, the authority to budget and appropriate revenue is implicit in Article XI–A and is an inherent power of all Maryland counties. *Schneider v. Lansdale, supra.*"

Contrary to the dissent's contention, we are not dealing with the law-making power of a county council under Const. Art. XI–A § 3, but with a "method or system for budgeting and appropriating revenues set forth in a county's charter," under Const. Art. XI–A, § 1. *See City of Annapolis,* 347 Md. at 15, 698 A.2d at 530.

**11.** In view of our holding, we need not address Petitioners' argument that the *Cheeks* requirement of "charter material" does not apply to a Charter amendment that is proposed by the Council, as contrasted with those amendments that are initiated by voters' petitions for a Charter referendum. Nor need we consider the County's response that the rule sought by Petitioners could result in legislation that would not be subject to the Executive's veto power.

## Section 3 of Bill 4–11

Section 3 of Bill 4–11, in substance, provides:

● Neither Sec. 2 of Bill 4–11 nor Code § 6–4–111 is severable.

● If any provision of Sec. 2 is invalid:

　● No provision of § 6–4–111 may be given effect;

　● Section 6–4–111 "shall be deemed repealed by operation of law"; and

　● The impasse procedure will be governed by Code § 6–4–110.

Inasmuch as we have held that Charter § 812 is valid and that Sec. 2 of Bill 4–11, at least in part, is invalid, the County asks that this case be remanded to the circuit court so that the declaratory judgment may be modified to state "that § 6–4–111 of the County Code as enacted by Bill No. 1–03 and amended by Bill No. 88–10 shall be deemed repealed in its entirety as provided in § 3 of Bill No. 4–11."[12] Thereby, the impasse resolution procedure ultimately would consist of submitting a fact finder's recommendation to the County Council which could "take the action it determines to be in the public interest." Code § 6–4–110(g). Petitioners contend that Sec. 3 of Bill 4–11 violates the mandate of Charter § 812 under which "the County Council shall provide by ordinance for binding arbitration."

 Section 3 of Bill 4–11 does more than invert the ordinary presumption that legislation is intended to be severable in the event of partial invalidity. Total invalidity of Sec. 2 of Bill 4–11, as per the nonseverability provision, ordinarily would result in the reinstatement of § 6–4–111, as enacted by Bill 1–03 and amended by Bill 88–10. *See Howard County Metropolitan Commission v. Westphal*, 232 Md. 334, 343, 193 A.2d 56, 61–62 (1963), where we said:

"The holding that Chapter 530 of the Laws of 1961 is invalid resulted in reinstating subsections (a) and (c) of

---

12. Bill 88–10 is part of the legislative history of § 6–4–111, but it is not otherwise relevant to the issues in this case.

§ 125 of the county code as originally constituted and giving them such effect as they had prior to the enactment of the invalid amendment. See *Cromwell v. Jackson,* 188 Md. 8, 29, 52 A.2d 79[, 89] (1947); *Humphreys v. Walls,* 169 Md. 292, 305, 181 A. 735[, 740] (1935); *Bangs v. Fey,* 159 Md. 548, 556, 152 [A.] 508[, 511] (1930); *State v. Rice,* [115 Md. 317, 329, 80 [A.] 1026 [, 1031 (1911) ]."

Section 3 of Bill 4–11, however, goes further. Because Sec. 2 falls, due to partial invalidity in conjunction with the nonseverability clause, Sec. 3 undertakes to repeal the statute, Code § 6–4–111, that otherwise would have been reinstated as a result of the failure of Sec. 2.

Our research has disclosed but one illustration in Maryland jurisprudence of this type of legislation. It involves the checkered history of the waiver of sovereign immunity by Prince George's County.

The history is traced in *Prince George's County v. Surratt,* 80 Md.App. 415, 564 A.2d 95 (1989), *rev'd,* 320 Md. 439, 578 A.2d 745 (1990). Section 1013 of the Prince George's County Charter, adopted in 1970, "provided that the County waived its governmental immunity and could be sued in tort in the same manner and to the same extent as any private person." *Id.* at 419, 564 A.2d at 97. *Bradshaw v. Prince George's County,* 284 Md. 294, 301, 396 A.2d 255, 260 (1979), so held, but excluded from the waiver of immunity cases in which the county's agent enjoyed public official immunity. By Chapter 825 of the Acts of 1976, the General Assembly enacted Maryland Code (1957, 1981 Repl.Vol.), Art. 25A, § 5(CC), conferring on charter counties the power, in relevant part, to

"provide by ordinance or inclusion in the county charter for the waiver of sovereign immunity so that the county may be sued in tort actions in the same manner and to the same extent that any private person may be sued." [13]

13. This subsection of the Express Powers Act was repealed by Chapter 594 of the Acts of 1987.

*James v. Prince George's County,* 288 Md. 315, 321, 418 A.2d 1173, 1177 (1980), held that the 1976 amendment to § 1013 of the Prince George's County Charter fully waived the County's immunity, including cases in which the agent enjoyed public official immunity.

In 1982, Prince George's County Charter § 1013 was amended again to provide in pertinent part: " 'The County may be sued in actions sounding in tort for which its officers, agents, and employees may be liable. . . .' " *Surratt,* 80 Md. App. at 420, 564 A.2d at 98. The 1982 version of Prince George's County Charter § 1013 was before this Court in *Prince George's County v. Fitzhugh,* 308 Md. 384, 519 A.2d 1285 (1987). We held that under § 5(CC) of the Express Powers Act, "[i]f a county elects to waive immunity, it must do so fully and without limitation on the scope of that immunity, although it may to some degree limit the extent of its liability." *Id.* at 393, 519 A.2d at 1289–90.

We then addressed the severability issue and recognized the ordinary rule reinstating the prior provision in the event of invalidity of the later provision. We said:

> "If the offending provision is severed, the remainder of § 1013 constitutes a full waiver of governmental immunity. The section would read as it did in 1976, and in *James* [*v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980) ] we held it had that effect. If the language added in 1982 is not severed, § 1013 is invalid in its entirety, because of its violation of the Express Powers Act. The total invalidity of the 1982 version of § 1013 means that this case is governed by the section as it was adopted in 1976."

*Id.* at 395, 519 A.2d at 1290.

While *Fitzhugh* was pending, Prince George's County, in 1986, again amended Charter § 1013, limiting its waiver to cases in which its officers, agents or employees did not enjoy public official immunity. The provision was clearly invalid under *Fitzhugh.* The 1986 amendment, however, also provided:

> " 'The sentences, clauses or phrases of this section shall not be severable. If any such sentence, clause or phrase of this

section is declared unconstitutional or invalid for any reason, then it is intended and declared by the people of the County that the entire section be declared invalid.'"

*Surratt*, 80 Md.App. at 421, 564 A.2d at 98 (emphasis removed from original). The Court of Special Appeals in *Surratt* held that the only reason for including the above-quoted provision was "to emphasize the desire to expunge § 1013 completely from the Charter if a portion is deemed invalid." *Id.* at 423, 564 A.2d at 100. The same conclusion was reached by Judge Young in two cases in the United States District Court for the District of Maryland. *See Walker v. Prince George's County*, 667 F.Supp. 1103, 1105 (D.Md.1987), and *Scinto v. Kollman*, 667 F.Supp. 1106, 1109 (D.Md.1987).

In *Surratt v. Prince George's County*, 320 Md. 439, 578 A.2d 745 (1990), this Court reversed the Court of Special Appeals on the ground that the wording of the ballot question did not convey with reasonable clarity the scope and effect of the 1986 Charter amendment. *Id.* at 450–51, 578 A.2d at 751. We observed, however, that "[w]ere the 1986 amendment to the charter valid, [the] holding [by the Court of Special Appeals] might well be correct." *Id.* at 445, 578 A.2d at 748.

The case before us is distinguishable from the *Surratt* decisions, *Walker,* and *Scinto.* Provisions in the Prince George's County Charter for the waiver of sovereign immunity were governed by the Express Powers Act. *Fitzhugh* explained:

"Nor is § 5(CC) an unconstitutional mandate which may not be imposed on a charter county. This grant of power does not require a county to waive governmental immunity. A charter county is free to exercise the power to waive immunity or not as it sees fit. There is nothing mandatory about this. It is only when a county chooses to waive immunity under § 5(CC) that the 'all or nothing' requirement of the subsection comes into play."

*Fitzhugh,* 308 Md. at 394, 519 A.2d at 1290.

The provisions of Anne Arundel County ordinances dealing with binding arbitration are controlled by County Charter

§ 812. Unlike the Express Powers Act and the Prince George's County Charter dealing with the waiver of sovereign immunity, the Anne Arundel County Charter, § 812, mandates that there be an ordinance adopting binding arbitration, implemented as part of the budget process, for the resolution of impasses in collective bargaining with public safety employees. The voters of Anne Arundel County determined in Charter § 812 that the County Council would not have discretion to reject the effect of binding arbitration. The total repeal of Code § 6–4–111 that is attempted by Sec. 3 of Bill 4–11 violates Charter § 812 and is of no effect. Consequently, County Code § 6–4–111 stands as enacted by Bill 1–03 and amended by Bill 88–10.

For all of the foregoing reasons, we reverse the judgment of the Circuit Court for Anne Arundel County and remand this case to that court for the entry of a declaratory judgment in accordance with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED AND CASE REMANDED FOR THE ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THE OPINION OF THIS COURT.**

**COSTS TO BE PAID BY ANNE ARUNDEL COUNTY, MARYLAND.**

BATTAGLIA, J., Dissents.

Dissenting Opinion by BATTAGLIA, J.

Although the majority appropriately determines that Section 812 of the Anne Arundel County Charter applies to both the County Executive and the County Council, such that Section 2 of Bill 4–11, attempting to eviscerate Section 812, is void as violative of the Charter, its second conclusion—that Section 812 does not violate the Maryland Constitution—is clearly erroneous. Specifically, Article XI–A of our Constitution states, with respect to local law-making power, that, "[e]very charter so formed shall provide for an elected legislative body in which shall be vested the law-making power of

said City or County." Maryland Constitution Article XI–A, Section 3.

Section 812 of the Anne Arundel County Charter purports to direct the Anne Arundel County Council to implement, by ordinance, a system of binding arbitration for labor disputes with law enforcement personnel and firefighters. The Section, in pertinent part, requires the County Council to include in the yearly budget any award that has been made by the arbitrator, without any discretion in the County Council to modify the award in any way.

In so doing, Section 812 violates the Maryland Constitution by delegating the power to appropriate County revenue, an essential aspect of local law-making power,[1] to a private actor. In going in the opposite direction, the majority erroneously asserts that Section 812 is constitutional because the County Council retains some measure of discretion and control over spending the County's money in that it has the power to enact ordinances that control the logistics of the arbitration process. The standard used, and its application by the majority are in error.

---

1. While the majority recognizes that making budgets and appropriating funds are "inherent powers" of counties in Maryland, Maj. Op. at 748–49, 53 A.3d at 1199, it concludes that a system of binding arbitration "does not implicate, on analysis, the lawmaking power of the Council." Maj. Op. at 747–49, 53 A.3d at 1198–99. My colleagues assert that our statement in *City of Annapolis v. Anne Arundel County*, 347 Md. 1, 698 A.2d 523 (1997) that, "[t]he budgetary and appropriation system is a fundamental aspect of the form and structure of a home rule county's government[,]" *id.* at 15, 698 A.2d at 530 (internal quotations omitted), stands for the principle that a charter amendment purporting to direct the County Council to appropriate funds in a certain manner, in this case consistent with an arbitrator's award, is proper charter material. This highlights a fundamental misunderstanding of the instant amendment and our prior cases. Section 812 *does not* alter the form or structure of the budget system; rather, it obliterates the County Council's constitutional discretion in the existing process. The majority's mistake in this regard, while clearly important for our jurisprudence, is not my focus because the majority errs more substantially in concluding that Section 812 does not divest completely the County Council of its control over the budget, as will be explained *infra*.

The appropriate test to determine whether a limitation on the County Council's power is permissible is, "the degree to which the county council retains discretion and control regarding an area under its authority pursuant to Article XI–A of the Maryland Constitution," as articulated by Judge John C. Eldridge in *Save Our Streets v. Mitchell*, 357 Md. 237, 253, 743 A.2d 748, 757 (2000). The majority states that Section 812 does not violate our State Constitution because, "[o]nce the voters, acting under Const. Art. XI–A, [Section] 1, made the policy decision, Charter [Section] 812 left all of the detail of the implementation to the Council for the exercise of its Art. XI–A, [Section] 3 law-making power in Bill 1–03." Maj. Op. at 749–50, 53 A.3d at 1200. This assertion is without merit, however, because Section 812 does not leave any discretion in the County Council with regard to whether it will fund any award made by an arbitrator, or when and how. Thus, the County Council *does not* retain control or discretion over its budget, which is an important aspect of its law-making power. *See City of Annapolis v. Anne Arundel County*, 347 Md. 1, 14, 698 A.2d 523, 529 (1997) ("[T]he authority to budget and appropriate revenue is implicit in Article XI–A and is an inherent power of all Maryland counties.").

The abrogation of the County Council's law-making power by delegation to the arbitrator of the ability to impugn the budget is the gravamen of this case and renders Section 812 unconstitutional. In *Anne Arundel County v. Fraternal Order*, 313 Md. 98, 543 A.2d 841 (1988), we distinguished between charter amendments that leave sufficient discretion to the County Council to survive Constitutional scrutiny and those that do not. At issue in that case was whether a newly created lieutenant position of the Anne Arundel County Detention Center should have been included in a collective bargaining unit. The charter amendment we scrutinized imposed binding arbitration on the County and the law enforcement union with respect to whether the position would be included in the bargaining unit, but left to the County Council the discretion to determine the pay for the position. We held that the amendment was constitutional because, "the County

Council and the County Executive still retain the ultimate decision-making authority with respect to employee compensation" *Id.* at 117, 543 A.2d at 851.

Our brethren on the Court of Special Appeals, in *Wicomico County FOP, Lodge 111 v. Wicomico County*, 190 Md.App. 291, 988 A.2d 555 (2010), also have implemented our jurisprudential distinction. In that case, a charter amendment that purported to require that the Wicomico County Council adopt binding arbitration and include any award in its budget, much like the Charter provision at issue here, was determined to be unconstitutional. The amendment at issue required the County Council to adopt legislation that would provide a framework for the arbitration process. In holding that the amendment was not constitutional, our brethren in the intermediate appellate court relied on our decisions in *Cheeks v. Cedlair Corp.*, 287 Md. 595, 415 A.2d 255 (1980) and *Griffith v. Wakefield*, 298 Md. 381, 470 A.2d 345 (1984) to conclude that, because the amendment "mandated the enactment of legislation which usurped the Council's legislative discretion with respect to a specific subject matter and a specific group of employees," it was unconstitutional. *Wicomico County*, 190 Md.App. at 303, 988 A.2d at 560–61. The majority disavows this case without any analysis and, in so doing, *sub silencio*, overrules *Cheeks* and *Griffith*.

In differentiating *Wicomico County* and its jurisprudential origins in *Cheeks* and *Griffith*, the majority adheres to the tenets of the *dissent* in *Griffith*. In *Griffith*, we were faced with a proposed Baltimore County charter amendment that purported to set forth a system for binding arbitration to resolve collective bargaining disputes involving County-employed firefighters. The proposed amendment "set[ ] forth, in minute detail, the composition, function, and powers" of the arbitration board that was to resolve any disputes between the County and the firefighters. *Griffith*, 298 Md. at 386, 470 A.2d at 348. The proposed amendment also stated that any award by the arbitration board would be binding on the County Council and County Executive, that the County Executive was required to include any funds necessary to carry out

the arbitration board's awards, and that the County Council could not decrease or remove such funds when it approved the budget submitted by the County Executive, just as in the instant case.

We held that the amendment was not appropriate "charter material" because it "is not intended to, nor does it, alter the 'form or structure' of the Baltimore County government." *Id.* at 388, 470 A.2d at 349. Instead, we recognized that the proposed amendment divested the County Council of any discretion related to compensation of Baltimore County fire-fighters. We were careful, however, to note that a system of binding arbitration could be implemented, but only if done in two steps; first, the charter would have to be amended to *permit* the County Council to enact legislation regarding binding arbitration, then the County Council would have to enact such legislation:

> If the proposed Baltimore County charter amendment had merely *authorized* the Baltimore County Council to enact a system of binding arbitration with regard to the compensation of Baltimore County employees, and if, pursuant to that authorization, the Baltimore County Council had exercised its discretion to enact *an ordinance* containing provisions similar to those in the proposed charter amendment now before us, the present case would be distinguishable from *Cheeks.*

*Id.* at 389–390, 470 A.2d at 350.

The dissent in *Griffith,* authored by the author of the instant opinion, would have upheld the charter amendment because the author did not agree with the principle that the citizens of a county may authorize the County Council to adopt binding arbitration but are not permitted to control the details of the scheme. Under his view, the citizens of a county, consistent with our State Constitution, could completely divest the County Council of its legislative power in favor of an arbitrator. The dissent did not agree that the power of the citizens of a county was limited to mere authorization; rather he believed that citizens have the right to set forth whatever

system of local government they wish, including one in which all legislative discretion has been removed to a private actor. This rationale, which was rejected by the majority in that case, is precisely what the majority now embraces, thereby *sub silentio* overruling *Griffith* and *Cheeks* and explicitly rejecting *Wicomico County*. Not only does the majority confuse our jurisprudence, but it practically permits an arbitrator to enfeeble the finances of the County by making an award for which there is not sufficient money in the local coffers.

Finally, the majority makes much of the fact that Section 812 was approved by the voters and that, "[t]o say that the voters of a county, exercising their power to amend the Charter, cannot direct that their policy decision be implemented by the County Council would be to hold that only the County Council ultimately can decide whether binding arbitration is County policy." Maj. Op. at 748, 53 A.3d at 1199. This statement, however, completely misconstrues the amendment at issue. There is no question that the citizens of a county can authorize the County Council to enact binding arbitration, manifesting the policy of the County. What the citizenry cannot do, however, is take over the role of the County Council by assigning its power to set the County budget to a private actor.[2]

The majority has uprooted three decades of our jurisprudence regarding the constitutionality of charter amendments. The legal landscape that results from today's decision is one in which the citizens of a county could divest the legislative body of budgetary authority without constitutional violation. I disagree and thus dissent.

---

**2.** The majority also seems prepared to subject those laws approved by the voters to a less substantial constitutional scrutiny than those laws not so voted upon, a decision that makes no sense whatsoever when one considers that citizens voting on legislation is simply a vehicle to enactment, not deserving of any special status as compared to any other vehicle for enacting legislation. Moreover, such a system of constitutional review would destroy any notion that we are a representational democracy and eviscerate the power of our Constitution to prevent the enactment of unjust laws.